# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 11-826

**DONNA D. JOHNSON, ET UX.**

**VERSUS**

**STATE OF LOUISIANA, DEPT. OF TRANSPORTATION AND DEVELOPMENT**

**\*\*\*\*\*\*\*\*\*\***
**APPEAL FROM THE**
**THIRTY-FIRST JUDICIAL DISTRICT COURT**
**PARISH OF JEFFERSON DAVIS, DOCKET NO. C-240-04**
**HONORABLE STEVE GUNNELL, DISTRICT JUDGE**
**\*\*\*\*\*\*\*\*\*\***

**SYLVIA R. COOKS**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, John D. Saunders, and Shannon J. Gremillion, Judges.

**AFFIRMED**.

James D. Cain, Jr.
113 Dr. Michael DeBakey Drive
Lake Charles, LA 70601
(337) 310-4300

BarryA. Roach
Larry A. Roach, Inc.
2917 Ryan Street
Lake Charles, LA 70601
**ATTORNEYS FOR PLAINTIFFS/APPELLANTS**
**Donna D. Johnson, et ux.**

James Caldwell, Attorney General
Patrick M. Wartelle
P.O. Drawer Z
Lafayette, LA 70502
(337) 233-7430
**ATTORNEYS FOR DEFENDANT/APPELLEE**
**State of Louisiana, Dept. of Transportation and Development**

**Cooks, Judge**

## FACTS AND PROCEDURAL HISTORY

Seventeen-year-old Casey Johnson, (Casey) the son of Donna D. Johnson and Anthony W. Johnson (Plaintiffs), died in a one-car automobile accident on Louisiana Highway 102 in Jefferson Davis Parish. Casey was returning from a visit at his girlfriend's home around 8:00 o'clock P.M. The road surface was wet. As Casey's vehicle entered a curve to the right, he lost control of it leaving the roadway to the right. His vehicle struck the headwall of a cement culvert running under the roadway, rolled over into the ditch, partially ejecting Casey, and trapping his head and neck between the vehicle and the ditch. Casey died as a result of his injuries. His parents filed suit for wrongful death against the State of Louisiana, Department of Transportation and Development (DOTD) alleging DOTD was either strictly liable, negligent, or partially at fault for the death of their son. Plaintiffs alleged the roadway was maintained in a hazardous condition because the headwall of the concrete culvert was slightly above grade and because the slope of the ditch was steeper than it should have been. DOTD maintained that the accident was caused solely by the negligence of Casey in failing to maintain control of his vehicle under the conditions at the time of the accident. DOTD further maintained there was no defect in the roadway, and that the headwall and pitch of the slope were not a cause of Casey's fatal injuries.

The jury returned a verdict in favor of DOTD finding it was not negligent, denying recovery to Plaintiffs. Judgment was signed dismissing Plaintiffs' claims with prejudice. Plaintiffs appeal alleging four assignments of error. In Plaintiffs' first assignment of error it is alleged the trial court erred in allowing DOTD to introduce a document into evidence which DOTD had not produced during discovery thus subjecting Plaintiffs to trial by ambush. The second assignment of error maintains that the trial court erred in allowing DOTD's attorney to question

Plaintiffs' expert, Dean Tekell (Tekell), in the area of accident reconstruction even though he had not been tendered as an expert in accident reconstruction. Tekell testified that he did not perform an accident reconstruction of this accident. Third, Plaintiffs contend the trial court erred in allowing DOTD's expert, Dr. Joseph Blaschke, (Blaschke), to testify as to accident reconstruction given that he admitted in pre-trial discovery, and traversal, that he was not retained as an accident reconstruction expert nor had he conducted an accident reconstruction analysis of this accident. Lastly, Plaintiffs assert the jury's finding of no negligence on the part of DOTD is manifestly erroneous because the record establishes "no reasonable factual basis for the findings of the trial court." Finding no error in the trial court's rulings, we affirm.

## DISCUSSION AND LEGAL ANALYSIS

We have frequently set forth and explained the manifest error standard of review. In *Billings v. State ex rel. Dept. of Transp. and Development*, 01-131 (La. App. 3 Cir. 6/13/01), 826 So.2d 1133, 1140, we stated:

> We may not set aside a jury's finding of fact in absence of manifest error or unless it is clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La. 1989); *Stobart v. State, through DOTD*, 617 So.2d 880 (La. 1993). In applying the manifest error-clearly wrong standard, we must determine not whether the jury was right or wrong, but whether its conclusion as factfinder was a reasonable one. *Mart v. Hill*, 505 So.2d 1120 (La. 1987). We are compelled to review the record in its entirety to determine whether the jury's finding was clearly wrong or manifestly erroneous. *Id.* We may not reverse if the jury's findings are reasonable in light of the record when reviewed in its entirety, even if convinced that if we had been sitting as the trier of fact, we would have weighed the evidence differently. *Sistler v. Liberty Mututal Ins. Co.*, 558 So.2d 1106 (La. 1990).

After a full review of this record we cannot say the jury manifestly erred in concluding that DOTD was not liable for the injuries which caused Casey's death. The jury's finding was reasonable under the evidence presented. The evidence showed that Casey was travelling on a wet roadway at night and lost control of his vehicle. Although there was no evidence that he was exceeding the posted speed

2

limit, there was expert testimony which opined that he was travelling too fast for the roadway conditions that night. Casey's girlfriend testified that Casey was familiar with this stretch of highway as he had travelled it several times visiting her. Additionally, there was proper signage ahead of the curve warning motorists of the approaching curve.

Plaintiffs and Defendant offered expert testimony concerning whether the roadway was properly maintained and/or properly constructed. Plaintiffs' experts, Defendant's expert, and State Trooper Richard Fox all agreed that Casey's vehicle was out of control when it left the roadway due solely to his own actions and 1) even if the slope would have been a typical slope for which a 3:1 slope would be required, Casey could not have regained control of his vehicle after it left the roadway; and 2) even if Casey's vehicle had not collided with the concrete culvert it would have entered the ditch and rolled over as it was out of control when it left the roadway. Additionally, the jury heard expert testimony that the area of roadway where the accident occurred was not a typical cross-section requiring a 3:1 slope. Don Romero testified that he measured the slope at the scene and found the actual slope at this location was a gentler 3:1.8 slope. Plaintiffs' expert disagreed. It was for the jury to make credibility determinations regarding expert testimony. We cannot say the jury manifestly erred in concluding that the decedent's injuries were caused by his own negligence and in assigning no fault to DOTD. These were reasonable findings of fact.

Plaintiffs also assert that there should have been a "clear-zone" or established set-back for the purpose of allowing a motorist to go off the roadway without "the threat of serious bodily harm." The evidence shows this roadway was built in 1936 and overlaid in 1962 at which time, as both Plaintiffs' and Defendant's experts agreed, there was no "clear zone" concept in place. Plaintiffs' expert, Tekell, testified there has never been a major reconstruction or new

3

alignment of this roadway which would have required DOTD to bring this roadway up to existing standards. He also testified that this roadway was built in compliance with the American Association of State Highway Transportation Officials (AASHTO) standards in effect at the time it was constructed. Tekell testified at trial that the concrete abutment was "unreasonably hazardous" but also admitted that he did not reach that conclusion in his initial report. He testified that it was after he prepared his report when he discussed this terminology with Plaintiffs' counsel. He further testified that as an expert witness in other accident cases he had described concrete headwalls like this one as acceptable and as not being unreasonably dangerous. Most importantly, Tekell testified that in his expert opinion, even if Casey's vehicle had not hit the portion of the concrete culvert sticking up three inches above the ground, his automobile would have flipped over once he went into the ditch. He further testified that even if the slope had been maintained at a 4:1 ratio Casey's vehicle would not have made it back onto the roadway. He opined the vehicle left the roadway out of control and was unable to re-enter the highway.

Plaintiffs further assert that DOTD is at fault for its failure to follow standards set forth by (AASHTO). We rejected this argument in *Billings*, 826 So.2d at 1141, stating "[A] review of this guide shows that the AASHTO standards were only recommendations, not mandates. Rather than show that the standards were mandatory such that DOTD had to follow them, this appendix repeatedly indicates that these standards are recommendations."

Plaintiffs' first three assignments of error relate to issues concerning the experts' testimony and the propriety of allowing into evidence a document which was not provided to Plaintiffs during discovery. Plaintiffs' insist it was error for the trial judge to allow Defendant to introduce a one-page document described as a Bi-Weekly Work Order. The trial judge apparently believed the document was

4

inadvertently left out of the stack of documents produced to Plaintiffs prior to trial.

> In reviewing the evidentiary decisions of a trial court, this court must consider whether the particular ruling complained of was erroneous, and if so, whether the error prejudiced the complainant's case. Reversal is not warranted unless the error prejudiced the complainant's case.

*Johnson v. First Nat'l Bank of Shreveport*, 00-870, p. 29 (La.App. 3 Cir. 6/20/01), 792 So.2d 33, 55, (citation omitted), *writs denied*, 01-2770 (La.1/4/02), 805 So.2d 212; 01-2783 (La.1/4/02), 805 So.2d 213.

This document dealt with a work order for a different mile marker than the location of the accident. Mark Benoit (Benoit) with DOTD testified that the location referenced in this document was two-tenths of a mile from the mile marker at the site of the accident. The work order involved grading or excavating with a backhoe and did not relate to working on the slope of the highway. Plaintiffs were given the opportunity to cross-examine the state's witness concerning this document. Plaintiffs do not show that this document has any relevance to the case at bar nor how Plaintiffs were prejudiced by the introduction of this evidence. Louisiana Code of Evidence Article 103(A) provides in pertinent part "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a *substantial* right of the party is affected."(emphasis added). We find that introduction of this document into evidence, and the examination and cross-examination relating to the contents of the document did not adversely affect any substantial rights of Plaintiffs. This document offered little if any evidentiary value on the salient facts the jury was directed to determine.

Plaintiffs' next assignment of error asserts that the trial judge erred in allowing Defendant to examine Plaintiffs' expert concerning what Plaintiffs describe as "accident reconstruction testimony." He was offered and qualified as an expert in Highway Design and Traffic Engineering. Plaintiffs assert that Tekell was not offered at trial in this case as an expert in accident reconstruction.

5

Plaintiffs do not assert that Tekell is not qualified to be an expert on accident reconstruction. His own testimony demonstrates that he is indeed qualified to be an expert on that subject, and has been qualified as such by courts in the past. Plaintiffs did not want to qualify him as such in this case and instead used another expert for that purpose. A review of Tekell's testimony reveals that in his deposition, and at trial, he gave testimony that appeared damaging to Plaintiffs' case on causation. This appears to be an effort by Plaintiffs to negate the impact of Tekell's testimony as their own expert by identifying certain aspects of his testimony as equal to providing an expert opinion on accident reconstruction.

The questions asked to Tekell on direct and cross examination were general questions about the accident and were asked other experts and lay witnesses including the state troopers who investigated the accident. These questions attempted to examine facts concerning the accident such as the fact that Casey lost control of his vehicle negotiating the curve on a wet road; the slope of the roadway embankment; the height of the cement culvert above ground level; the points of impact demonstrated by examining the car or photos of the car; and the roll-over of Casey's vehicle. Tekell had the expertise to testify regarding these facts and to give his opinion as an expert as to what these facts indicated to him. He verbally made it clear to the jury during his testimony that he did not conduct an accident reconstruction and that he was not testifying as an accident reconstruction expert in this matter.

Plaintiffs make similar arguments in their third assignment of error contending the trial court erred in allowing DOTD's expert, Blaschke to testify as to accident reconstruction. Blaschke admitted in pre-trial discovery that he was not retained as an accident reconstruction expert nor had he conducted an accident reconstruction analysis of this accident. He reiterated that fact to the jury.

Nevertheless in both instances the trial judge allowed Blaschke and Tekell to

6

answer Plaintiffs' and Defendant's questions concerning the accident and offer their opinions of what caused the accident and what Casey's car did after leaving the roadway. The trial judge acknowledged that both experts were completely qualified to answer these questions.

Plaintiffs assert that allowing these experts to testify as to matters of "accident reconstruction" violates the principals set forth in *Daubert*. In both of these assignments of error Plaintiffs misapprehend what was set forth in *Daubert*. In *Cheairs v. State of Louisiana, DOTD*, et al., 03-680, (La.12/3/03), 861 So.2d 536,540-41(alteration in original) the Louisiana State Supreme Court set forth the standard for determining the admissibility of expert testimony:

> Admissibility of expert testimony in Louisiana is governed by La.Code of Evid. Art. 702, which provides as follows:
>
> > If the scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
>
> The above article follows Fed. Rule of Evid. 702, according to Official Comment (b) (1988) to La. Code of Evid. Art 702. A district court is accorded broad discretion in determining whether expert testimony should be held admissible and who should or should not be permitted to testify as an expert. Official Comment (d), citing 3 J. Weinstein & M. Berger, Weinstein's Evidence 702 [02] (1981). *See also Merlin v. Fuselier Const., Inc*. 2000-1862, p. 12 (La. App. 5 Cir. 5/30/01), 789 So.2d 710, 718 ["Whether an expert meets the qualifications of an expert witness and the competency of the expert witness to testify in specialized areas is within the discretion of the trial court."] A district court's decision to qualify an expert will not be overturned absent an abuse of discretion. *Id*.; *State v. Castleberry*, 1998-1388 (La.4/13/99), 758 So.2d 749,776.
>
> In *Daubert*, the United States Supreme Court set a new standard to assist district courts in evaluating the admissibility of expert testimony. The new standard required the district courts to perform a 'gatekeeping' function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.' 509 U.S. at 589. *See also State v. Chauvin* 2002-1188 (La.5/20/03), 846 So. 2d 697, 700-01.
>
> . . .

7

Moreover, determination of the admissibility of expert testimony under La. Code of Civ. Proc. Art. 702 "turns upon whether it would assist the trier of fact to understand the evidence or to determine a fact in issue". Official Comment (c), citing 3 Weinstein & Berger, 702[02].

In *Chearis*, the state supreme court adopted a three-prong inquiry for determining the admissibility of expert testimony which was first articulated in *City of Tuscaloosa v. Harcross Chemicals, Inc.*, 158 F. 3d 548 (11th Cir. 1998).

[T] he admission of expert testimony is proper only if all three of the following things are true:

(1) The expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

. . .

There are three intertwined bases for excluding testimony under [Federal] Rule 702: (1) if the testimony will not assist the trier of fact; (2) if scientific evidence is not sufficiently reliable; and (3) if the particular expert does not have sufficient specialized knowledge to assist the jurors. (citation omitted).

*Chearis* 861 So.2d at 542.

A review of the testimony of Tekell and Blaschke, the testimony of Plaintiffs' expert offered and qualified at trial as an expert in accident reconstruction, and of the state troopers who testified, demonstrates that the questions asked these witnesses were similar in many respects and were all aimed at affording the jury the opportunity to understand how this accident occurred and the factors involved in reaching a decision on causation of Casey's fatal injuries. Tekell and Blaschke made it clear to the jury that they were not testifying as accident reconstruction experts, although they both possessed the qualifications to do so, and made it clear to the jury that they had not conducted the tests they would have conducted if they were going to be testifying in that expert capacity. They

8

both gave their opinions of what the evidence they observed showed them about the accident. Plaintiff called and was allowed to present the testimony of an expert qualified as an accident reconstructionist. It was for the jury to make credibility determinations regarding each of the witness's testimony including their expert opinions on what happened in this accident. We find these assignments of error are without merit.

Finding no manifest error in the trial court's ruling we affirm the judgment. All costs of appeal are assessed against Plaintiffs/Appellants.

**AFFIRMED.**