GAIDRY, J.
|2This is an appeal from the judgment of the Office of Workers’ Compensation (“OWC”) finding the appellant, the Shaw Group, Inc., (“Shaw”) liable for the injury and death of its former employee Brady Arceneaux,[1] as well as for all benefits due under the Louisiana Workers’ Compensation Act.[2] For the following reasons, we affirm the judgment of the trial court.
FACTS AND PROCEDURAL HISTORY
Brady Arceneaux began his employment with Shaw as a welder in 2000. On or about September 19, 2005, Mr. Arceneaux was performing repairs on a chemical dryer unit owned by the Syngenta Crop Protection, Inc., (“Syngenta”) plant in Geismar, Louisiana.
Arceneaux and one other Shaw employee wore protective masks and clothing while performing the repairs to avoid exposure to hazardous chemicals inside the dryer. One chemical known to be inside the dryer was Demp Malonamide. According to the Material Safety Data Sheet (“MSDS”) on Demp Malonamide supplied by Syngenta, the material “contains low levels of an impurity that has a similar structure to a known carcinogen.” This known carcinogen is M210. “Until further information is available, Syngenta considers it prudent to consider this impurity as if it were a carcinogen.” The material appears as a yellowish, odorless powder.
Arceneaux and his co-worker performed repairs on the dryer for approximately twenty minutes. The repairs consisted of moderate to heavy manual labor. Upon completion, when they were removing their protective clothing, the co-worker noticed a yellow powder on Arceneaux’s face, neck, |sand chest. Arceneaux was immediately decontaminated, but it was determined by Syngenta that he had been exposed to approximately five times the acceptable level of Demp Malonamide.[3] Despite the exposure, Arceneaux exhibited no immediate symptoms of illness.
Arceneaux left employment with Shaw in 2006. In February of 2007, Arceneaux reported for the first time an irritation of the throat and a difficulty with swallowing. That same month, Arceneaux was diagnosed with esophageal cancer. His treating oncologist, Dr. Michael J. Castine, determined that the cancer originated with *1089 Arceneaux’s exposure to Demp Malonam-ide on or about September 19, 2005.
Arceneaux filed a claim for compensation with OWC on July 24, 2007, naming Shaw as his employer at the time of the injury. By this time, Arceneaux was unable to work at all due to his cancer treatment. Shaw answered by denying that Arceneaux was injured in the course and scope of his employment with Shaw.
Arceneaux died on January 30, 2008. His autopsy determined he died from complications due to adenocarcinoma originating in the esophagus and spreading throughout his digestive system. As a result, his wife Jacquelyn amended his petition to include a claim for death benefits on behalf of her and their two minor children.[4]
Shaw filed a motion for summary judgment on February 9, 2011, claiming the Arceneauxs would be unable to carry their burden of proof since their case relied entirely upon the expert testimony of Dr. Castine, who l4gave a deposition as an expert on oncology. In his deposition, Dr. Castine testified:
I think it’s highly possible and probable, given the timing and given his age, that this exposure created some change in him to either accelerate transformation or to cause the transformation from a precancerous lesion to cancerous lesion. That’s — that’s what I answered before, and I — you know, I believe that.
Shaw contemporaneously filed a motion to strike Dr. Castine’s testimony. Shaw’s reasoning on both motions was that Dr. Castine’s testimony is unreliable and does not satisfy the requirements of expert testimony put forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and State v. Foret, 628 So.2d 1116 (La.1993). Shaw gave the following reasons for the unreliability of Dr. Castine’s testimony:
• There is no evidence that the chemicals that Mr. Arceneaux was allegedly exposed to could have caused his cancer (i.e., no proof of general causation);
• Dr. Castine failed to conduct a thorough investigation into Brady Arcen-eaux’s history and other possible causes for his cancer, including his Barrett’s esophagus and/or his use of chewing tobacco.
• Dr. Castine cannot state with any degree of certainty what level of exposure to M210 is necessary to cause esophageal cancer and whether Mr. Arceneaux was exposed to that level (i.e. specific causation).
In contrast to Dr. Castine’s testimony, Shaw introduced the medical opinion of Dr. Michael Greenberg as an expert in toxicology. In Dr. Greenberg’s medical report,[5] he concluded that the “most likely cause for Mr. Arceneaux’s esophageal carcinoma is Barrett’s esophagus resulting *1090 |sfrom gastro-esophageal reflux ... Carci-nomatous transformation of Barrett’s esophagus is a well-recognized pre-cursor [sic] phenomenon that is clearly and caus-atively associated with the development of esophageal cancer.”
Dr. Castine had also addressed Mr. Ar-ceneaux’s pre-existing condition of Barrett’s esophagus, stating that it had been asymptomatic and benign prior to the exposure to Demp Malonamide. Although it increased Mr. Arceneaux’s risk for esophageal cancer, it was not the cause, and the exposure to M210 was the “last hit” in the cycle causing the Barrett’s esophagus to transform into adenocarcinoma of the esophagus.
Dr. Greenberg went further to discount Mr. Arceneaux’s exposure to Demp Malo-namide as the cause of his esophageal cancer by stating that no medical literature or scientific studies exist that show the chemicals to which he was exposed cause esophageal cancer.
Shaw also filed a motion on February 11, 2011 to compel the attendance of Dr. Castine and Dr. Greenberg at the trial, which was denied by OWC. The Arcen-eauxs filed their own motion for summary judgment on February 18, 2011, claiming that Mr. Arceneaux’s exposure to Demp Malonamide, diagnosis of esophageal cancer and subsequent death from it were all uncontested facts.
The entire matter was submitted on briefs on August 1, 2011, and OWC rendered its judgment on September 9, 2011. OWC found Shaw liable for the death of Brady Arceneaux, and that his surviving family was entitled to all benefits available under the Louisiana Workers’ Compensation Act. OWC stated in its written reasons:
The Court finds and gives greater weight to Dr. Castine as the treating physician and particularly as an oncologist trained in the area of cancer and determining whether a person has cancer, the causes of cancer, and the treatment of | ,¡cancer. The Court finds that Dr. Castine is in a better position to determine and give an opinion as to whether or not this chemical, M-210, was indeed the cause of Mr. Arceneaux’s esophageal cancer.
Mr. Arceneaux had Barrett’s which is an esophageal condition, but Dr. Castine testified that that condition normally just increases your risk by 1 percent to actually have esophageal cancer.
Also, Dr. Castine testified that Mr. Arceneaux was at a rather young age to have this type of cancer. Normally, most patients are in their 50s or 60s before ever having esophageal cancer, but Mr. Arceneaux died at the age of 42.
The Court finds that Dr. Castine fully supported his causation opinion in his deposition, which he explained over and over again. Although, he was well-challenged by defense counsel in that deposition, the Court finds that Dr. Castine clearly supported the causation of the M-210 causing the esophageal cancer of Mr. Arceneaux in this case.
Shaw filed a motion for a suspensive appeal in this case on October 12, 2011, which was granted by OWC.
ASSIGNMENTS OF ERROR
The workers’ compensation judge erred in admitting the testimony of Dr. Michael Castine as to the cause of Mr. Arceneaux’s esophageal cancer because Dr. Castine’s causation opinion was unreliable as it was not based upon the proper foundation or methodology as required by Dcmbert or Foret.
The workers’ compensation judge erred in denying Shaw’s motion to have Dr. Cas- *1091 tine and Dr. Greenberg testify live at a formal hearing.
The workers’ compensation judge erred in giving more weight to Dr. Castine, an oncologist, over Dr. Greenberg, a toxicologist, concerning whether Demp Malonam-ide, a chemical, caused Mr. Arceneaux’s cancer.
The workers’ compensation judge erred in finding that Mr. Arceneaux’s esophageal cancer was caused by the one time alleged exposure to Demp Malonamide because there was no reliable evidence that Demp [7Malonamide is capable of causing esophageal cancer or that it actually caused Mr. Arceneaux’s cancer.
STANDARD OF REVIEW
If a trial court conducts no Dau-bert analysis of any kind, the exclusion of the expert’s evidence without an evaluation of the relevant reliability factors is legal error. Robertson v. Doug Ashy Building Materials, Inc., 2010-1552, p. 28 (La.App. 1 Cir. 10/4/11), 77 So.3d 389, 355, writ denied, 2011-2468 (La.1/13/12), 77 So.3d 972. In the instant case, OWC merely commented on the credibility of both experts and found the deposition testimony of Dr. Castine to hold more weight over the report of Dr. Greenberg. Nowhere in OWC’s judgment is an analysis of the reliability factors of Daubert. Such factors are whether the expert’s methodology in developing the opinion is testable or has been tested, whether the theory on which the opinion is based has been subjected to peer review or publication, the known or potential rate of error of the methodology employed, and general acceptance by the scientific community. See Daubert, 509 U.S. at 593, 594, 113 S.Ct. 2786. Daubert is not a rigid test which requires adherence to each factor. These are suggestive factors designed to determine the overall scientific validity of an expert opinion. See Daubert, 509 U.S. at 594, 595, 113 S.Ct. 2786. The trial court must conduct a preliminary assessment of these factors to determine whether the reasoning or methodology underlying the testimony is scientifically valid and can be applied to the facts at issue. See Foret, 628 So.2d at 1122. A party may file a pretrial motion to determine the reliability of the expert’s testimony, and the court shall make a ruling on the reliability no later than thirty days prior to trial. La.C.C.P. art. 1425(F). The analysis established by Daubert is to be applied to determine the admissibility of expert testimony. Cheairs v. State ex rel. Department of Transp. and Development, 2003-0680, p. 7 (La.12/3/03), 861 So.2d 536, 541. The trial court is required to perform a “gatekeep-ing” function to “ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.” Versluis v. Gulf Coast Transit Co., 2008-0729, p. 5 (La.App. 4 Cir. 7/29/09), 17 So.3d 459, 463 (citing Daubert, 509 U.S. at 589, 113 S.Ct. 2786). The lack of such an analysis by OWC constitutes legal error, and a de novo review of Dr. Castine’s testimony (which is sought by Shaw to be excluded) must be made by this court.
DISCUSSION

Reliability Analysis of Dr. Castine’s Testimony

Early in Dr. Castine’s deposition, he states, “[T]he treatment for esophageal cancer right now has a pretty set standard for the drugs that we have, the treatments with regards to radiation and surgery.” This suggests that there are established methodologies for the diagnosis and treatment of esophageal cancer that are generally accepted by doctors in his field. Shaw raises the fact that Dr. Castine is not familiar with the chemicals Demp Malo-namide or M210; however, Dr. Castine *1092 doesn’t have to be. He researched the known literature dealing with the chemicals; namely, the MSDS provided by Syn-genta, as well as Dr. Greenberg’s report. Dr. Castine applied that research to the expert knowledge he has in the field of oncology, which is the study of the growth of cancerous tumors. Dr. Castine stated that his knowledge on the subject is based on the results of preclinical studies that he has read.
Shaw points to Mr. Arceneaux’s Barrett’s esophagus as being a possible cause of his cancer. Dr. Castine was familiar through his medical practice with Barrett’s esophagus and stated that it is generally a benign condition, “but it is a change in the esophagus. Another event happens and |flthe change becomes more malignant. It becomes precancerous and then eventually cancerous.”
Dr. Castine took this general theory on how esophageal cancer is caused in a subject with Barrett’s esophagus and applied it specifically to Mr. Arceneaux:
The Barrett’s Esophagus was probably the weak link in his armor because that area of his body had already experienced changes possibly, and then he was exposed to [M-210] ... There were already changes in the cells that were going down that pathway. It doesn’t mean they would complete the journey, but they’re going down the pathway, and then the exposure happens, and a year later or 15 months later, there’s cancer in a 40-year old man.
As his treating physician, Dr. Castine took Mr. Arceneaux as he found him: a forty-one-year-old male with the condition of Barrett’s esophagus, but without any other abnormalities. In all his extensive experience and generally accepted observations in the field of oncology, Dr. Castine knew two things: men in their forties typically do not contract esophageal cancer; and Barrett’s esophagus is typically not a cause of the cancer,[6] but makes one more susceptible if exposed to a condition that accelerates the mutation of cells. In studying Mr. Arceneaux’s entire medical history, the only condition that Dr. Castine found that could have brought about a rapid acceleration in the mutation of healthy cells into cancerous ones was the chemical exposure on September 19, 2005.
Dr. Castine was further convinced that the Demp Malonamide was responsible for Mr. Arceneaux’s esophageal cancer by the area of his body to which he was exposed:
[I]f he got the exposure specifically with regards to his aerodigestive tract, that is significant. We’re not talking about finding powder on his upper back | inor on his foot; we’re talking about finding powder at the entrance to his upper aerodigestive tract, his nose and his mouth, which allows exposure to his entire body, particularly his aerodigestive tract — nasal passages, nasal, pharynx, larynx, esophagus, stomach, and lungs.
Shaw questions the possibility of Mr. Arceneaux’s admitted use of smokeless tobacco as a possible cause of his cancer, and Dr. Castine was able to answer, based on established findings and generally accepted principles of oncology. He stated that there are two variants of esophageal cancer. The variant Mr. Arceneaux did not have is typically caused by alcohol and tobacco use, while the variant Mr. Arcen-eaux had can be found in patients with Barrett’s esophagus. He therefore found Mr. Arceneaux’s sporadic use of smokeless *1093 tobacco to be a far less probable cause of his variety of esophageal cancer.
Lastly, Shaw states that Dr. Green-berg’s report indicates no reported eases of Demp Malonamide or M210 causing esophageal cancer; in fact, M210 has been proven to cause bladder cancer in lab rats. Dr. Castine responds:
[M210 has] not been known to cause any type of carcinoma, really, other than, in some lab animal, it caused bladder cancer, which is no interpretation of what happens in humans. We have no idea how things translate from animals to humans. We still don’t know. And I do have a lot of expertise in that aspect, because we do look at preclinical trials, and we do take stuff from bench to humans, and so I have a lot of experience with that.
In other words, Dr. Castine’s applied methodology is the observation of carcinogenic substances affecting humans. He does not attempt to analogize a substance’s effect on an animal to how it will affect a human being. Dr. Castine further states that the mere absence of reported cases of ^esophageal cancer caused by M210 does not mean that the chemical cannot cause esophageal cancer.
Dr. Castine knew the substance was carcinogenic from documentation. From his patient’s history, he knew Mr. Arceneaux was heavily exposed to the substance through his nose and mouth, leading to the esophagus. From his knowledge, experience, and generally accepted principals of oncology, he knew that Mr. Arceneaux’s Barrett’s esophagus made him more likely to contract esophageal cancer should he come in contact with a carcinogenic substance. He also knew from his practice and from clinical studies that Mr. Arceneaux’s limited tobacco use would not typically cause the type of cancer he contracted. He therefore concluded, based on scientific publications, applied methodologies, and generally accepted practices, that the M210 was by far the most likely cause of Mr. Arcen-eaux’s esophageal cancer. When an expert’s opinions are grounded in methods and procedures of science, rather than just speculative belief or unsupported speculation, the Daubert standard of reliability is satisfied. See Devall v. Baton Rouge Fire Department, 2007-0156, p. 8, 4 (La.App. 1 Cir. 11/2/07), 979 So.2d 500, 502. Dr. Castine’s testimony meets that standard of reliability, and was rightly admitted by the trial court.

Lack of Live Expert Testimony

For good cause shown, the court may allow live expert testimony at the contradictory hearing to determine the qualifications of the expert or the reliability of the testimony. La.C.C.P. art. 1425(F)(2). Both experts have shown impressive curriculum vitaes that in this court’s opinion more than qualify them as experts in their respective fields. Dr. Cas-tine gave an extensive deposition, in which Shaw had the opportunity to question him, and Dr. Greenberg authored an extensive report. The trial court decided that | Ti>the written testimony of the experts was sufficient and calling them to testify in open court was unnecessary. We find no abuse of discretion and no cause to overrule this decision by the trial court.

Evidentiary Weight of Expert Opinions

The trial court qualified both Dr. Castine and Dr. Greenberg as experts in their respective fields. Rulings on the qualifications of an expert witness will not be disturbed on appeal absent manifest error. See State v. Young, 2009-1177, p. 8 (La.4/5/10), 35 So.3d 1042, 1047, cert. denied — U.S. -, 131 S.Ct. 597, 178 L.Ed.2d 434 (2010). When competing ex *1094 pert opinions are properly admitted, it is for the fact finder to make credibility determinations regarding each of the witness’s testimony including their expert opinions. See Johnson v. State, Dept. of Transp. and Development, 2011-826, p. 9 (La.App. 3 Cir. 2/15/12), 85 So.3d 204, 210.
We find this case analogous to a previous case that came before this court, Morgan v. State Farm Fire and Cas. Co., Inc., 2007-0334 (La.App. 1 Cir. 11/2/07), 978 So.2d 941. In Morgan, testimony of a contractor was accepted by the trial court over the homeowner’s own expert, where the homeowner’s action alleged the contractor failed to make repairs to the home in a timely, professional and workmanlike manner. The contractor’s testimony and exhibits contradicted much of the expert’s opinion, and the trial court ultimately found the contractor to be more credible. Morgan, 978 So.2d at 943, 944. We ruled that the effect and weight to be given expert testimony is within the broad discretion of the trial judge, and the trier of fact may accept or reject any expert’s view, even to the point of substituting its own common sense and judgment for that of an expert witness where, in the fact-trier’s opinion, such substitution appears warranted by the evidence as a whole. Id. at 946.
11sIn the instant case, we have two competing expert opinions, but the rationale of Morgan still applies. In reviewing the two expert opinions, OWC employed its own common sense judgment to determine which expert opinion should be believed over the other. The reasons for OWC’s taking Dr. Castine’s opinion over Dr. Greenberg’s are readily apparent. Dr. Castine actually treated Mr. Arceneaux. He is an experienced oncologist who evaluated Mr. Arceneaux’s medical history against all potential cancer-causing risks to which he had been exposed. He decided that Mr. Arceneaux’s exposure to Demp Malonamide had the highest likelihood of causing his esophageal cancer, far more than the occasional tobacco use and the Barrett’s esophagus. OWC found from Dr. Castine’s opinion and other evidence presented that Demp Malonamide is a cancer-causing agent, and that it specifically caused Mr. Arceneaux’s esophageal cancer. OWC did not abuse its discretion in reaching this conclusion.
CONCLUSION
Dr. Castine’s expert testimony meets the Daubert standard of reliability and is admissible. There was no cause to require both experts to testify before the court when they produced copious amounts of information that was presented to the court. OWC did not abuse its discretion by favoring the opinion of Dr. Castine over that of Dr. Greenberg. For these reasons, we affirm the judgment of OWC
DECREE
The decision of the Office of Workers’ Compensation Court to grant the surviving family of Brady Arceneaux all workers’ compensation benefits to which they are entitled is affirmed. All costs of this appeal are assessed to the appellant, the Shaw Group, Inc.
AFFIRMED.

. Mr. Arceneaux is survived by his spouse Jacquelyn Arceneaux and their children, Bra-die and Kelsey Arceneaux.

. Louisiana Revised Statutes § 23:1 et seq.

.The actual level of Mr. Arceneaux’s exposure is disputed by the parties; however, it is undisputed that the yellow powdery substance was witnessed on and around Mr. Arcen-eaux's face, neck, and chest.

. The Arceneauxs had filed suit against Shaw and Syngenta in the 18th Judicial District Court in the matter entitled Brady J. Arceneaux and Jacquelyn P. Arceneaux v. Syngenta Crop Protection, et al., Docket no. 66060, Division "D.” Shaw and the Arceneauxs filed a joint motion to stay the workers’ compensation proceedings until the matter in the 18 th JDC could be resolved, and the motion was granted on April 20, 2009. Shaw sought to lift the stay on August 12, 2009, and OWC granted the lift on August 17, 2009. Details of the resolution of the 18th JDC matter are not included in the record; however, the record does indicate that the parties attempted pretrial mediation from that time and through the following year.

. Dr. Greenberg was accepted as an expert in toxicology, rather than oncology. He was never Mr. Arceneaux’s treating physician and never personally examined Mr. Arceneaux. His only knowledge of Mr. Arceneaux comes through the medical records and autopsy report.

. Dr. Castine mentioned that Barrett’s esophagus by itself has a one percent chance to convert into adenocarcinoma.