# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-1332

**CHRISTAL SUIRE**

**VERSUS**

**LCS CORRECTIONS SERVICES, INC., ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 66,109-B
HONORABLE THOMAS F. FUSELIER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## J. DAVID PAINTER
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and J. David Painter, Judges.

**AMENDED AND AFFIRMED.**

**Christopher A. Edwards**
**P.O. Box 2970**
**Lafayette, LA 70502-2970**
**Counsel for Defendants-Appellants:**
    **LCS Corrections Services, Inc., et al.**

**Michael W. Robinson**
**P.O. Box 1109**
**Eunice, LA 70535**
**Counsel for Plaintiff-Appellee:**
    **Christal Suire**

**PAINTER, Judge.**

Defendant, LCS Corrections Services, Inc., appeals the judgment of the trial court finding that Plaintiff, Christal Suire, was wrongfully terminated from her employment because she was pregnant and awarding damages to her. Plaintiff has also appealed, seeking an increase in damages.

## FACTUAL AND PROCEDURAL BACKGROUND

Christal Suire (Suire) had been employed by LCS Corrections Services, Inc. (LCS) as a guard at the Basile Detention Center since September 2002. In early July 2003, Suire learned that she was pregnant. She told her supervisor, Captain Ray Rider, that she was pregnant on a Friday. She then worked as scheduled on Saturday and Sunday. She was scheduled to be off on Monday and Tuesday, and she returned to work on Wednesday. At that time, she was told by Warden Gary Copes that she needed a work excuse from her obstetrician. That same day, Suire obtained a note from Dr. Heinen, her obstetrician, that stated she could work in "a prison environment" and in the "control room." LCS contends that this was a restricted work release and that Suire was never released by her obstetrician for full duty work as required by LCS work guidelines. As Suire had not been employed by LCS long enough to obtain coverage under the Family Emergency Medical Leave Act (FEMLA) and did not provide a release which was acceptable to LCS, Suire was discharged from her employment on July 17, 2003. Her child was born March 3, 2004.

Suire presented her case to the EEOC and the Louisiana Commission on Human Rights and was given a Right to Sue Letter. This suit was then filed against LCS in Evangeline Parish.

1

Following a bench trial, judgment was rendered in favor of Suire. The trial court found that Suire had proved all of the requirements for a discrimination claim as articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973) and that LCS violated both 42 U.S.C. § 2000 (specifically the Pregnancy Discrimination Act) and La.R.S. 23:342. Suire was awarded $6,450.00 in lost wages based on her earning $7.50 per hour at forty hours per week for a period of five months. Suire was also awarded $5,000.00 for mental anguish and emotional distress. The trial court further awarded $3,000.00 in attorney's fees to Suire.

LCS now appeals the judgment of the trial court, alleging that it was manifestly erroneous in finding that all the requirements for a discrimination claim were met and in finding that Suire was fired because she was pregnant. LCS continues to maintain that Suire was fired not because she was pregnant, but because she did not have a full duty work release from her treating physician.

Suire also appeals, alleging that the damages were inadequate, that the trial court erred in failing to award punitive damages, and that the amount of attorney's fees was too low.

**DISCUSSION**

*Employment Discrimination Claim*

Suire claimed that LCS wrongfully terminated her employment and discriminated against her solely because she was pregnant. LCS urges this court to reverse the trial court's award of lost wages, mental anguish, emotional distress, and attorney's fees based on its argument that the trial judge committed manifest error in finding that all requirements for a discrimination claim under Title VII, as articulated in *McDonnell Douglas*, had been met. LCS continues to maintain that Suire was fired

2

because she failed to produce a full duty release from her treating physician, not because she was pregnant. We are not at all persuaded by this ineffectual argument.

Suire's cause of action arises under Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978, and La.R.S. 23:342. "The Louisiana jurisprudence has reviewed such claims following the analysis set forth in federal cases for discrimination under Title VII." *Brittain v. Family Care Serv., Inc.*, 34,787, pp. 4-5 (La.App. 2 Cir. 6/20/01), 801 So.2d 457, 460-61. Under the *McDonnell Douglas* test, a plaintiff is required to show that: (1) she was a member of a protected class, (2) she was qualified for the position she lost, (3) she suffered an adverse employment action, and (4) that others similarly situated were more favorably treated.

Audrey Hardy, a Control Sergeant at the prison, testified that she worked in the control room until two weeks before her child was born. She further testified that she was not required to get a release to return to work from her treating physician until after the birth of her child; however, she did not know she was pregnant until about two weeks before the birth.

Captain Rider testified that Suire was a good employee. Captain Rider also testified that the prison had no light duty positions and that the control room position was a full duty one. He further testified that he knew of two other employees who became pregnant and continued to work at the prison.

Deputy Warden David Viator testified that it would not be an unreasonable accommodation to allow a pregnant employee to work in the control room for the duration of their pregnancy. There were five control rooms besides the main control room and they had to be manned everyday and on every shift. Deputy Warden Viator

3

further testified that he knew of other employees who became pregnant and continued to work at the prison without the pregnancies interfering with their job performance.

The excuse provided by Suire's treating physician indicated that she "could work in a prison environment" and in "the control room." Furthermore, Suire testified that she had been assigned to control room duty for periods of months at a time prior to her pregnancy. That testimony was uncontradicted, and no one from the prison testified that there was any reason Suire could not have worked in the control room for the duration of her pregnancy. The testimony recited above also established that the control room position was considered a full duty one. LCS gave no reason at all to explain why it refused to accept the work release provided by Suire as a full duty release. We agree with the trial court that the excuse provided should have been sufficient to meet the requirements of the LCS policy and that the actions of LCS in firing Suire violated both 42 U.S.C. § 2000 and La.R.S. 23:342. We cite with approval the trial court's findings that:

> [u]nlike other employees similarly situated, petitioner was denied leave and was fired. NO evidence was introduced to indicate that petitioner failed to perform her duties prior to termination or that termination occurred for any purpose other than pregnancy. Consequently, it appears that all of the requirements for discrimination under Title VII as articulated in *McDonnell Douglas* . . . have been met."

Under the *McDonnell Douglas* factors, Suire proved that she was pregnant (and, as such, was a member of a protected class), that she was qualified for the position that she lost, that she suffered an adverse employment action in being fired, and that other pregnant employees were not fired. Thus, based on the ample evidentiary support in the record for the trial court's findings of fact, we find no manifest error therein. In sum, we find neither manifest error in the trial court's factual findings nor legal error in the trial court's application of the law. That portion of the trial court's judgment finding that LCS wrongfully discharged Suire because of her pregnancy is affirmed.

4

*Damages*

We now turn to the issue of damages. LCS contends that no damages should have been awarded because Suire was not wrongfully discharged. We have found that contention to be without merit. Suire, in her appeal, contends that the general damages awarded were inadequate and that punitive damages should have been awarded.

In *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1260 (La.1993), the Louisiana Supreme Court stated:

> In *Reck v. Stevens*, 373 So.2d 498 (La.1979), this Court commented on appellate review of general damage awards and on the "much discretion" in fixing damages accorded to trial courts by La.Civ.Code art. 1934(3)(1870). The decision pointed out that the role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration.
>
> . . . .
>
> The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. *Gaspard v. LeMaire*, 245 La. 239, 158 So.2d 149 (1963); *Ballard v. National Indem. Co. of Omaha, Neb.*, 246 La. 963, 169 So.2d 64 (1964); *Lomenick v. Schoeffler*, 250 La. 959, 200 So.2d 127 (1967). Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. *Coco v. Winston Industries, Inc.*, 341 So.2d 332 (La.1976); *Bitoun v. Landry*, 302 So.2d 278 (La.1974); *Spillers v. Montgomery Ward & Co.*, 294 So.2d 803 (La.1974).
>
> The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from *Gaspard v. LeMaire*, 245 La. 239, 158 So.2d 149 (1963) through *Coco v. Winston Industries, Inc.*, 341 So.2d 332 (La.1976), and through *Reck* to the present case is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award

of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.

We find that the award of $5,000.00 in general damages in this case is woefully inadequate and is a clear abuse of the trial court's vast discretion. Suire and her fiancé of seven years, William Joseph Broussard, both testified that they were making ends meet before she was fired. They both testified that Suire enjoyed her job. Suire testified that after she was fired, she was depressed and felt worthless. Broussard testified that Suire went into a depression after losing her job and "closed herself off" to him and their children. The couple testified that they were forced to sell many of their belongings in order to provide for their three young children. Even so, the couple and their children were evicted from their home shortly before the birth of their fourth child. It was difficult for Suire to obtain other employment due to the impending birth of her child, and her fiancé was not able to obtain employment due to his disability. At a time when Suire should have been joyfully awaiting the birth of her child, she was instead consumed with worry over whether or not she would be able to buy diapers and formula for her other children and the new baby. It also caused a strain on the couple's relationship. Suire did eventually find part-time work as a security guard at a casino.

Based on the facts of this case, we find that an award of $25,000.00 for mental anguish and emotional distress is appropriate. (*See Goldsby v. State, Dep't of Corr.*, 03-343 (La.App. 1 Cir. 11/7/03), 861 So.2d 236, *writs denied*, 04-0328, 04-0330 (La. 4/8/04), 870 So.2d 271, wherein a wrongfully discharged probation and parole officer was awarded $20,000.00 in damages for mental anguish; and *Brown v. Catalyst Recovery of La., Inc.*, 01-1370 (La.App. 3 Cir. 4/3/02), 813 So.2d 1156, wherein a

6

wrongfully discharged employee was awarded $30,000.00 in damages for emotional distress.)

While Suire contends that the trial court erred in awarding lost wages for a period of only five months, she states in her brief that she "does not contend that such error was clearly wrong" and does not brief the issue further. As such, we are constrained from increasing that award and, therefore, must affirm the trial court's award of $6,450.00 in lost wages.

With respect to punitive damages, we note that:

> In order to recover punitive damages under 42 U.S.C. § 1981a(b)(1), the complaining party must demonstrate that the defendant engaged in a discriminatory practice with malice or with reckless indifference to the federally protected rights of the employee. *Kolstad v. American Dental Assoc.*, 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed. 2d 494 (1999); *Patterson, supra*. In addition, the plaintiff must show that the discriminatory act was committed by a managerial agent acting within the scope of his employment. *Kolstad, supra*. In the punitive damage context, an employer may not be vicariously liable for the discriminatory employment decision of managerial agents where those decisions are contrary to the employer's good-faith efforts to comply with Title VII. *Kolstad, supra*; *Rubinstein v. Administrators*, 218 F.3d 392 (5th Cir. 2000).

*Hanley v. Doctors Hosp. of Shreveport*, 35-527, pp. 26-27 (La.App. 2 Cir. 6/6/02), 821 So.2d 508, 525.

Here, the record shows that the decision to terminate Suire's employment was made by managerial agents of LCS acting within the scope of their employment. However, in considering whether the discriminatory act was committed with malice or with reckless indifference to Suire's rights, we must agree with the trial court that "the actions of LCS were due to lack of or insufficient communication and not through bad faith." As such, we affirm the trial court's refusal to award punitive damages in this case.

*Attorney's Fees*

With respect to attorney's fees, we first note that 42 U.S.C. § 2000e-5(k) provides that the trial court, in its discretion, may allow the prevailing party to recover a reasonable attorney's fee as part of the costs. The purpose of this provision was to encourage the seeking of relief by aggrieved employees and to aid in the enforcement of the provisions of the Civil Rights Act. In this case, we find that the trial court abused its discretion in awarding only $3,000.00. Depositions were taken, and counsel participated in a trial and prepared post-trial memoranda. Accordingly, we increase the award of attorney's fees from $3,000.00 to $5,000.00.

In response to Plaintiff's answer to appeal seeking an award of additional attorney's fees for work done in connection with the appeal of this matter, we find that Plaintiff's counsel is entitled to an additional $2,000.00 in attorney's fees for this appeal.

**DECREE**

The judgment of the trial court is amended to increase the award of general damages from $5,000.00 to $25,000.00. We also increase the award of attorney's fees from $3,000.00 to $5,000.00 and award an additional $2,000.00 in attorney's fees for work done on this appeal. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are taxed to Defendant-Appellant, LCS Corrections Services, Inc.

**AMENDED AND AFFIRMED.**

8