Judge Terrel J. Broussard, Pro Tempore
|,The appellants, Paul O. Schwarzenber-ger, M.D. and Clinical Oncology Research Associates, L.L.C, (“CORA”) seek this Court’s review and reversal of the trial court’s October 18, 2016 judgment granting summary judgment in favor of the appellees, Louisiana State University Health Sciences Center-New Orleans and the LSU Board of Supervisors (“LSU”) dismissing the appellants’ claims with prejudice. For the reasons herein, we affirm.

*1203
Facts and Procedural History

On July 15, 2009, the plaintiffs/appel-larits filed a petition for writ of mandamus, declaratory relief and damages or alternatively petition for injunctive relief against the defendants/appellees in Civil District Court for the Parish of Orleans.
The petition alleges that the appellees are liable for breach of contract and willfully failing to transfer funds to either of the appellants,
According to the petition, the appellant, Dr. Schwarzenberger, specializes in hematology, internal medicine, and clinical oncology. In 1995, the appellant began working for LSU Medical School as an assistant professor, and later became a tenured associate professor of medicine and associate professor of genetics. During |2his tenure at LSU, the appellant entered into separate agreements with three pharmaceutical companies, Ligand, GlaxoSmithKline and NovaRX, to lead clinical trials of cancer treatments on terminally ill cancer patients who had no other medical options. Each agreement is explained below.
In 2002, the GlaxoSmithKline agreement was entered into with LSU. According to the agreement, GlaxoSmithKline was to submit payments for services directly to LSU to pay for the study.
In 2003, LSU entered into two separate agreements for additional clinical studies with NovaRx and Ligand[1]. NovaRx and Ligand sent money directly to LSU for these studies to be performed.
In 2004, while the above studies were ongoing, the appellant resigned from his full-time position at LSU and became part-time. At that time, LSU, as well as the pharmaceutical sponsors of the studies, made written requests that all of the appellant’s patients under the studies be transferred out of the LSU system. Consequently, on May 21, 2004, the appellant formed CORA, an entity for him to continue the clinical trials. Separate transfer agreements were entered into so that residual funds from the clinical trials would be transferred to CORA. The appellant alleges that during that time, and in an effort to keep his patients alive, he also worked under the auspices of Touro Infirmary New Orleans and then Providence Hospital in Mobile, Alabama. The appellant claims that his repeated attempts to get LSU to transfer funds to either him or CORA were to no avail.
On February 16, 2011, LSU answered the petition and filed a reconventional demand against the appellant alleging that he failed to properly manage financial | ¡¡matters associated with the clinical trials constituting a breach of the appellant’s employment agreement with LSU.
This appeal focuses on three separate motions for summary judgment filed by LSU.
First, LSU filed a motion for summary judgment on appellant’s contract claims. Next, LSU filed a motion for summary judgment on appellant’s claims regarding the Ligand trials, arguing a lack of justiciable controversy on the grounds of mootness. Lastly, LSU filed a motion for summary judgment on appellant’s claims for breach of contract and breach of fiduciary duty with respect to the GlaxoSmithKline clinical trials.
On August 13, 2015, the trial court held a contradictory hearing. At the hearing, the trial court heard arguments on LSU’s motion for summary judgment filed in opposition to the appellant’s injunctive and mandamus relief; both LSU’s and the appellant’s motion in limine to exclude the expert testimony of each party’s witnesses; *1204 and the three motions for summary judgment filed by LSU on July 28,2015.
A review of the transcript of the hearing held on October 18, 2016, shows that the testimony of the expert was lacking in methodology and scientific quality and could not assist the court in its deliberations. The trial court also excluded the expert deposition testimony of Holly Sharp that was offered by the appellant to demonstrate a loss of profit. As to LSU’s motions for summary judgment, in the' October 18, 2016 judgment reduced to writing, the trial court ruled:
IT IS ORDERED, ADJUDGED AND DECREED that LSU’s Motion for Summary Judgment on Plaintiffs’ Claims Regarding the Ligand 48/49 Trials Due to Lack of Justiciable Controversy on Grounds of Mootness is GRANTED and that LSU’s Motion for Summary Judgment on 14Plaintiffs’ Contract Claims is GRANTED. Accordingly, IT IS ORDERED that plaintiffs’ claims against LSU be and the same [sic] are hereby DISMISSED WITH Prejudice Pursuant to La. Code Civ. Proc. art. 1920...
This judgment is the subject of the instant appeal.

Daubert Challenge

The appellant argues the trial court erred in holding, as a matter of law, that his expert Holly Sharp, CPA, “could not testify.”
According to the appellant, Holly Sharp was retained as an expert CPA to offer her opinion regarding the monies CORA is allegedly due from the clinical trials; to substantiate whether .LSU owed CORA money; and to determine whether LSU’s auditors properly calculated the additional costs associated with the clinical trials. The overall contention of appellants on this issue is that the exclusion of the testimony of Holly Sharp was contrary to the pronouncements in Daubert v. Merell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). (analysis below).
In addition to the arguments posited above, the appellant argues that the trial court created an arbitrary baseline in determining that Ms. Sharp had not performed the work necessary to qualify as an expert.
LSU maintains that the trial court did hot abuse its discretion in excluding Ms. Sharp’s testimony asserting that Louisiana courts look to federal case law for guidance as to Daubert. LSU cited Lee Valley Tools, Ltd. v. Indus. Blade Co., 288 F.R.D. 254, 266 (W.D.N.Y. 2013), wherein the court stated that “an expert witness is permitted to use assistants in formulating his expert opinion,” Dura Auto. Sys. of Ind., Inc. v. CTS Corp., 285 F.3d 609, 612 (7th Cir. 2002), although an expert report that is merely a conduit for the opinion of a non-testifying expert must be excluded. Id. at 613.”
|fiThe general rule governing the admissibility of expert testimony in Louisiana courts is fdund in La. C.E. art. 702 which states that:" “[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if four conditions are satisfied.” The first, and critical, inquiry is to determine if “[t]he expert’s scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.” La. C.E. art. 702(1); see State v. Farrier, 14-0623, p. 7 (La. App. 4 Cir. 3/25/15), 162 So.3d 1233, 1239. The other three conditions pertinent to a Daubertr-Foret inquiry conducted by the trial judge as gatekeeper, are whether “...(2) The testimony is based on sufficient facts or data; (3) The testimony is *1205 the product of reliable principles and methods; and (4) The expert’ has reliably-applied the principles and methods to the facts of the case.” La. C.E. art. 702. In civil proceedings, the Daubert-Foret pretrial hearing is used “to determine whether a witness qualifies as an expert or whether the methodologies employed by such witness are reliable under Articles 702 through 705 of the Louisiana Code of Evidence.” La. C.C.P., art. 1425 F(l). The party demanding such a pretrial hearing and determination of the reliability of evidence which the opposing party intends to introduce into evidence at the trial “shall set forth sufficient allegations showing the necessity for these determinations by the court.” La. C.C.P. art. 1425 F(l) (emphasis added). Upon a timely filed and sufficiently alleged motion for a Daubert-Foret hearing, the court “shall” hold a contradictory hearing. La. C.C.P. art. 1425 F(2). “At the hearing, the court shall consider the qualifications and methodologies of the proposed witness based upon the provisions of Articles 104(A) and 702 through 705 of the Louisiana Code of Evidence.” Id.
| fiThus, in exercising her gatek-eeping function, a trial judge must make a “preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning and methodology properly can be applied to the facts in issue.’ ” Daubert, 509 U.S. at 592-593, 113 S.Ct. 2786. “Significantly, if the gatekeep-ing role is not properly executed, there is a risk that the expert evidence may be prejudicial or misleading. For this reason, trial judges must employ ‘a careful evaluation of the methodology surrounding the testimony and its conclusions.” Foret, 628 So.2d at 1122.
In the instant case, accounting and audit principles, means, and methods of the application to the facts of the alleged contract breach are relevant to the suit. In regard to the reliability of such expert opinion testimony, pertinent factors for the trial court to consider include: 1) the “testability” of the scientific theory or technique; 2) whether the theory or technique has been subjected to peer review and publication; 3) the- known or potential rate of error; and 4) whether the methodology is generally accepted in the scientific community. See Daubert, 509 U.S. at 594-595, 113 S.Ct. 2786; see also State v. Quatrevingt, 93-1644, p. 11 (La. 2/28/96), 670 So.2d 197, 204. It appears that the trial court relied on the three pronged test, in concluding to strike Ms. Sharp’s deposition testimony.
It is well-established that the trial court is afforded wide discretion in determining whether expert testimony should be admitted and who should not be qualified as an expert. See General Elec. Co. v. Joiner, 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). A trial court’s decision to qualify or disqualify an expert will not be overturned absent an abuse of discretion. See Cheairs v. State ex rel. Dept. of Transp. & Dev., 03-0680, p. 6 (La. 12/3/03), 861 So.2d 536, 541. This court opined in Everhardt v. Louisiana Dept. of Transp. and Dev., 07-0981, p. 15 (La. App. 4 Cir. 2/20/08), 978 So.2d 1036, 1048 that, “[wjhether an expert meets the qualifications of an expert witness and the competency of the expert witness to testify in specialized areas is within the sound discretion of the trial court.” The same precedent was reiterated in Jouve v. State Farm Fire and Cas. Co., 10-1522, p. 6 (La. App. 4 Cir. 8/17/11), 74 So.3d 220, 225, with the pronouncement that “[a] trial court’s decision to qualify an expert will not be overturned absent an abusé of discretion”.
The abuse-of-discretion standard is highly deferential to the trial judge’s determination under consideration. See *1206 LCR-M Ltd. P’ship v. Jim Hotard Prop., L.L.C., 13-0483, p. 9 (La. App. 4 Cir. 10/9/13), 126 So.3d 668, 675. Generally, a decision is considered an abuse if the trier of fact reaches a conclusion in a capricious or in an arbitrary manner. See Tugwell v. Plaquemines Parish Gov’t, 14-0657, p. 5 (La. App. 4 Cir. 11/19/14), 154 So.3d 695, 699. This Court also held that, “[a]rbitrary or capricious” means the absence of a rational basis for the action taken. See A.S. v. D.S., 14-1098, p. 17 (La. App. 4 Cir. 4/8/15), 165 So.3d 247, 257. Additionally, a court necessarily abuses its discretion if its ruling is based on an erroneous view of the law. See Show & Tell of New Orleans, L.L.C. v. Fellowship Missionary Baptist Church, 14-0843, p. 8 (La. App. 4 Cir. 12/17/14), 156 So.3d 1234, 1240. Boudreaux v. Bollinger Shipyard, 2015-1345 (La. App. 4 Cir. 6/22/16), 197 So.3d 761; § 11.3. Opinion testimony—Experts—Generally, 19 La. Civ. L. Treatise, Evidence And Proof § 11.3 (2d ed.).
In the case sub judice, the trial court did not abuse its discretion in striking the deposition testimony of Holly Sharp. At the contradictory hearing the, appellant failed to articulate; 1) the “testability” of the scientific theory or | «technique used to form an opinion; 2) whether the theory or technique had been subjected to peer review and publication; 3) the known or potential rate of error; and 4) whether the methodology was generally accepted in the scientific community. A review of the transcript of the hearing held on October 18, 2016, shows that the court determined that the testimony of the expert was lacking in methodology and scientific quality and could not assist the court in its deliberations. In her ruling, the trial court quoted Manning v. Crockett, No. 95 C 3117, 1999 WL 342715, at 3 (N.D. Ill. May 18, 1999), stating:
.. .preparing the expert’s opinion from whole cloth and then asking the expert to sign it if he or she wishes to adopt it conflicts with Rule 26(a)(2)(B)’s requirement that the expert ‘prepare’ the report. Preparation implies involvement other than perusing a report drafted by someone else and signing one’s name at the bottom to signify agreement. In other words, the assistance of counsel contemplated by Rule 26(a)(2)(B) is not synonymous with ghost-writing.
The trial court concluded that once Ms. Sharp was stricken as an expert, appellant was unable to prove damages. Faced with this determination, the appellant failed to proffer the excluded evidence. Therefore, it cannot be reviewed on appeal. He also failed to preserve his objection pursuant to La. Unif. R. Ct. App. 2-124
The record reveals that Ms. Sharp’s report did not comport with the Dauberb-Foret standard as it lacked a scientific basis and was void of pertinent methodology. The trial court properly performed its “gate-keeping” function and did not abuse its discretion in striking Ms. Sharp’s testimony.
^SUMMARY JUDGMENT ARGUMENTS

Contract Claims and Damages

The appellant asserts that the trial court erred in granting summary judgment as to his contract claims.
The appellant focuses his argument on LSU’s claim that he could not carry the burden of proving damages. The appellant maintains that LSU relied on its discovery requests wherein he sought identification of every expense incurred as a result of the clinical study. According to the appellant, LSU’s response was consistent with his testimony that he offered his services for free after he was no longer working *1207 with LSU. However, at the time of his testimony, the appellant had not calculated his uncompensated services. He still maintains that LSU was aware of his loss because LSU deducted expenses for his “Investigator fees”, which LSU submitted to the pharmaceutical companies. The appellant further argues that the trial court erred in striking the testimony of his expert witness, Holly Sharp, a certified accountant from LaPorte (discussed infra), who could have assisted in proving damages.
It is the appellant’s contention that LSU deprived him of compensation and that the trial court erred in not finding a dispute of material fact as to his alleged damages as a result of his contract claims.
Further, LSU maintains that two trial sponsors paid CORA over $140,000 and those funds were deposited directly in the appellant’s personal bank accounts, which gave rise to LSU’s separate claim of misappropriation of funds that was subsequently dismissed.
In a de novo review of this matter, this Court shall consider the evidence presented to the trial court, the admissibility of such evidence, and whether, after |insuch evidence is studied, a genuine issue of material fact remains. Portfolio Recovery Associates, LLC v. Johnson, 2012-1323, p. 4 (La. App. 4 Cir. 4/10/13), 113 So.3d 499, 502.
With its motion for summary judgment on the appellant’s claims, LSU attached the trial agreements for Ligand 48 and 49. The Ligand 48 agreement contains an effective date of January 2, 2003, between the Board of Supervisors of LSU, or otherwise the “Evaluator.” The agreement also contains eleven articles. Article number one outlines the statement of the work. Article number two indicates the period of performance from the January 2, 2003 date. Article number three names the appellant as the “Principal Investigator” under the direction of the “Evaluator”, such performance terminates- if the appellant becomes unavailable- and no acceptable successor can sponsor the clinical study. Article number four indicates that payment will be made to the “Evaluator” by the “Sponsor” (Ligand in this instance) in the amount-of $6,3.55.99 to be paid within twenty days of the initiation of the study and placed in an account by the “Evaluator.” The “Principal Investigator” can then draw from the account until the termination of the study, at which time any overpayments were to be returned to the “Sponsor.” LSU also attached the same agreement for the Ligand 49 clinical .study, which had an effective date of November 20, 2001, and allowed an initial $4,000 payment under Article number four.
LSU attached the clinical trial agreement between GlaxoSmithKline and No-vaRx. The agreement between GlaxoS-mithKline and LSU became effective on September 1, 2002. The agreement between NovaRx and LSU became effective on March 17, 2003. In both agreements, the appellant is named as the “Investigator” responsible for conducting the study. Each agreement provides detailed budgeting.
|nLSU provided the April 19, 2004 Letter of Assignment transferring the appellant to the part-time faculty of LSU’s Department of Genetics. The letter expresses that LSU does not expect the appellant to initiate any new clinical trials and indicates that any • inactive clinical trials will be closed immediately. LSU indicates that the appellant will transfer any remaining trial patients to another venue, and that his clinical trials will continue in accordance with LSU policies and regulations. The letter is signed by LSU employees: Bron-ya Keats, PhD, Professor and Head of the *1208 Department of Genetics; Charles V. Sanders, MD, Professor and Head of the Department of Medicine;. Larry H. Hollier, MD, Dean of the School of Medicine; and the appellant.
LSU attached excerpts from the March 30, 2015 deposition of the appellant. The appellant testified that he believed LSU breached contracts by demanding that the cancer patients he was assisting be transferred once he began his part-time status at LSU. The appellant admitted that CORA received approximately $35,000 for research from a clinical study named Am-gen [2] prior to receiving the letter of reassignment. Most importantly, the appellant was questioned about the loss he claims in his petition:
Q. ... Are you contending that you lost money as a result of LSU’s actions or inactions in this case?
A. I could argue if I see a loss, a loss is—if I have something and it goes away and I lose it. Here I additional work [sic] that I did for free that was uncompensated.
Q. Okay
A. So it’s not a loss, I mean I could argue that I could have spent this time doing something for profit rather than doing it for free.
, 11aQ. Right but have you actually sat down and put pen to paper to figure out what that number is?
A. No.
⅜ ⅜ ⅜
Q. So when you talk about losses or that you have not qualified them, how about profits? Have you ever put pen to paper to figure out the profits of which you claim that you were deprived of as' a result of LSU’s actions or inactions in this .case?
A. No.
The Louisiana Secretary of State Records for Clinical Oncology Research were attached, as well as separate letters of assignment for GlaxoSmithKline, Ligand 48, and Ligand 49. LSU attached the appellant’s first supplemental and amended answers to interrogatories and responses to requests for production of documents.
Lastly, excerpts from the October 15, 2012 deposition testimony of Roy Clay were attached. Mr. Clay, in an attempt to determine the amount of damages, if any, reviewed a report consisting of three years of data involving thirteen patients and offered his findings[3]. Specifically, the appellant avers that the trial court erred in granting summary judgment where disputed issues of material fact existed regarding his claims for damages.
We opine that first, in order to determine whether there is a dispute over damages, we review the contracts between the parties. “In general, ‘a contract, subject to interpretation on the four corners of the instrument without the necessity of extrinsic evidence, is interpreted as a matter of law.’ ” Vekic v. Popich, 2016-0508, pp. 5-6. (La. App. 4 Cir. 3/29/17), 215 So.3d 483, 486, quoting New Orleans Jazz & Heritage Found., Inc. v. Kirksey, 09-1433, p. 9 (La. App. 4.Cir. 5/26/10), 40 So.3d 394, 401 (citing Bartlett Constr. Co., Inc. v. St. Bernard Parish Council, 99-1186, p. 6 (La. App. 4 Cir. 5/31/00), 763 So.2d 94, 98).
In the instant case, the parties agree that there is no dispute as to the terms of the contracts. Essentially, each contract is between the “Sponsor”, the pharmaceutical *1209 company, and the “Evaluator”, LSU.[4] The contracts then go on to name .the appellant as the “Principal Investigator.” Per the contracts, payments are made to the “Evaluator” by the “Sponsor” until or unless the contract is terminated. The terminations clauses state that the “Sponsor” can terminate the contract at any time and for any reason, or in two months with written reasons. The “Evaluator” can also terminate the contract if circumstances beyond the Evaluator’s control were to come into play. At that time, the “Evaluator” is to be reimbursed only for actual costs. Specifically, in the contract between LSU and' GlaxoSmithKlein, the termination clause states:
Upon notice of termination, Institution and Investigator shall use best efforts to revoke any financial obligations incurred and shall avoid incurring any additional costs in connection with the Study Agreement. Institution shall be compensated only for Study-related work actually performed or reimbursed only for expenses actually and reasonably incurred through the effective date of termination with GSK has agreed to pay as part of the Study under this Agreement.
Also, the letters of assignment specifically instructed the appellant how to proceed with - the remaining patients, and advised him not to take on any more patients.
Attached as evidence in support of its summary judgment, LSU presented audits of each study after the appellant left LSU and organized CORA. In an effort 114to rebut LSU’s audits, the appellant intended to rely on the testimony of CPA Holly Sharp to attest to the appellant’s damages alleged by breach of contract. The trial court struck Ms. Sharp’s testimony (discussed in assignment of error number 3) and therefore, the appellant was unable to substantiate damages. Therefore, the accuracy of the LSU audits was not traversed or contradicted. The appellant’s self-serving testimony, that he continued to treat and assist patients by using his personal funds was not supported with any evidence; nor does it create a genuine issue of material fact.
[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(A)(3). “The burden of proof rests with the mover.” La. C.C.P. art. 966(D)(1). However, “if the mover will not bear the burden of proof at trial on the issue that is before the court,” then the mover is required “to point out to the court the absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense.” La. C.C.P. art, 966(D)(1).
An appellate court reviews the granting of a motion for summary judgment with the de novo standard of reviéw. Brunet v. Fullmer, 00-0644, p. 3 (La. App. 4 Cir. 1/10/01), 777 So.2d 1240, 1241. “Appellate courts use the ‘same criteria that govern the trial court’s consideration of whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law.’ ” Weintraub v. State Farm Fire & Cas. Co., 08-0351, p. 2 (La. App. 4 Cir. 10/29/08), 996 So.2d 1195, 1196-97, quoting Supreme Servs. *1210 and Specialty Co., Inc. v. Sonny Greer, Inc., 06-1827, p. 4 (La. 5/22/07), 958 So.2d 634, 638.
Filmore Parc Apartments II v. Foster, 2016-0568, pp.3-4 (La. App. 4 Cir. 2/15/17), 212 So.3d 621, 624.
The district court also properly discounted the self-serving and uncorroborated testimony of the appellant regarding loss of profits. The allowance of loss of profits as an element of damages is more liberal in actions purely in tort, as opposed to actions for breach of contract. See C.C. art. 2315. Shreveport Laundries v. Red Iron Drilling Co., 192 So. 895 (La. App. 2 Cir. 1939). In breach of contract cases, the loss of profits is recoverable as an element of damages, if they are proven with reasonable certainty. Mire v. Timmons, 155 So.2d 265 (La. App. 2 Cir. 1963); Jenkins v. Audubon Insurance Co., 110 So.2d 221 (La. App. 1 Cir. 1959). That is, the plaintiff must show that the loss of profits is more probable than not. Jordan v. Travelers, 257 La. 995, 245 So.2d 151 (1971). F & F Transfer, Inc. v. Tardo, 425 So.2d 874, 876 (La. App. 4 Cir. 1983).
A de novo review of the record reveals that the trial court did not err in granting LSU’s summary judgment as to the appellant’s contract claims.

Credibility

The appellant maintains that the trial court erred in weighing credibility for purposes of summary judgment.
The appellant stated that he presumed that the trial court relied on Freeman v. G.T.S., Corp., 363 So.2d 1247 (La. App. 4 Cir. 1978) and Wasco, Inc. v. Economic Dev. Unit, 461 So.2d 1055 (La. App. 4 Cir. 1984) in concluding that his testimony was insufficient to support a claim for damages.
In opposition, LSU argues that the appellant offered only descriptions of his activities without specifics about the patients he allegedly continued to assist and payments he did not receive. LSU further argues that the appellant failed to identify a contract between him and LSU, considering that the letters of assignment were between LSU and CORA. It is LSU’s contention that' the appellant’s personal losses have nothing to do with whether a genuine issue of material fact exists.
When there is a question of credibility as it relates to a summary judgment proceeding, this Court established in Williams v. Metro Home Health Care Agency, Inc., 2002-0534, p.4-5 (La. App. 4 Cir. 5/8/02), 817 So.2d 1224, 1227, that:
^Making an evaluation of credibility has no place in determining summary judgment; it is not the trial court’s function on motion for summary judgment to determine or even inquire into the merits of the issues raised. Rapp v. City of New Orleans, 95-1638 (La. App. 4 Cir. 9/18/96); 681 So.2d 433, writ denied 96-2925 (La. 1/24/97); 686 So.2d 868; Walker v. Kroop, 96-0618 (La. App. 4 Cir. 7/24/96); 678 So.2d 580. Deposition testimony may be used to support or oppose a motion for summary judgment, but it is not weighed. Leflore v. Coburn, 95-0690, 95-0249 La. App. 4 Cir. 12/28/96); 665 So.2d 1323, writ denied 96-0411 (La. 3/29/96); 670 So.2d 1234, writ not considered, 96-0453 (La. 3/29/96); 670 So.2d 1234.
Here the record is void of evidence that the trial court weighed the credibility of any witnesses. The record reveals that trial court correctly explored the material character of the facts presented in order to apply the law. For this reason, we find no merit to this assignment of error.

Mootness

Lastly, the appellant maintains that the trial court erred in granting LSU’s motion for summary judgment find *1211 ing his Ligand claims moot, claiming he was denied the opportunity to challenge LSU’s audits.
“A case is moot when a rendered judgment or decree can serve no useful purpose and give no practical relief.” Allums v. Allums, 2017-0021, p.3-4 (La. App. 4 Cir. 5/31/17), 221 So.3d 191, 2017 WL 2350945 (citing Cat’s Meow, Inc. v. City of New Orleans Through Dept. of Finance, 98-0601, p. 8 (La. 10/20/98), 720 So.2d 1186, 1193). “A case may become moot for several reasons. Some examples are that: (1) there has been a change in the law, (2) the defendant paid the monies owed, (3) the wrongful behavior has passed and is not likely to recur, or (4) a party has died. Id. By the time Leeway filed its petition for intervention, the judgment had already been paid to Jonesfilm and the judicial mortgage had been satisfied thereby making the instant case, which Leeway sought to intervene in, moot.” Lions Gate Films, Inc. v. Jonesfilm, 2012-1452, p.5 (La. App. 4 Cir. 3/27/13), 113 So.3d 366, 369-70.
Here, the parties do not dispute that LSU paid Ligand the residual funds after the termination of the clinical studies. The appellant failed to offer supportive and reliable evidence to the trial court to support his claim, nor could he prove damages. Thus, no issues of material fact remain as to Ligand and LSU is entitled to judgment as a matter of law.
CONCLUSION
This Court finds that the trial court correctly granted LSU’s summary judgment as to the appellant’s contract claims and as to the mootness claims regarding Ligand, and properly dismissed the appellant’s claims against LSU with prejudice.
AFFIRMED

. There are two Ligand trials referred to as Ligand 48 and Ligand 49.

. A separate clinical trial that is not the subject of this appeal.

. The record is void as to Mr. Clay’s occupation and whether he was offering his expertise in a certain field.

. In the contract between LSU and GlaxoS-mithKline, GlaxoSmithKline is referred to as the "Institution.” In the contract between LSU and, NovaRx, NovaRx is referred to as the "Center”. However, all of the contracts refer to Dr. Schwarzenberger as the "Princi- . pal” or "Principal Investigator.”