LOBRANO, J., CONCURS IN PART, DISSENTS IN PART, AND ASSIGNS REASONS
LOBRANO, J., CONCURS IN PART, DISSENTS IN PART, AND ASSIGNS REASONS.
I respectfully concur in part and dissent in part from the majority opinion. First, I concur in the part of the majority opinion affirming the district court's grant of summary judgment in favor of appellee, The Blood Center ("TBC"), and against appellant, Shameka Brown ("Ms. Brown"), as to Ms. Brown's disability discrimination claim. I dissent, however, from the part of the majority opinion affirming the district court's grant of summary judgment in favor of TBC as to Ms. Brown's pregnancy discrimination claim under La. R.S. 23:342. I would reverse that portion of the district court's judgment because genuine issues of material fact remain as to whether TBC provided more favorable treatment to other employees whose situations were similar in nature to Ms. Brown's emergency and whether disparate treatment occurred under the relevant TBC policies.
Under La. C.C.P. art. 966(A)(3), a motion for summary judgment shall only be granted when there is no genuine issue of material fact remaining and the mover is entitled to judgment as a matter of law. "Facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." Wood v. Lindsey , 2014-0907, p. 5 (La. App. 4 Cir. 1/28/15), 158 So.3d 939, 942. Although the burden of proof on summary judgment generally rests with the mover, "if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim...but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim...." La. C.C.P. art. 966(D)(1). Depositions may be filed in support of or in opposition to motions for summary judgment. La. C.C.P. art. 966 (A)(4) (stating, "[t]he only documents that may be filed in support of or in opposition to the motion are ...pleadings...."). Moreover, a litigant's testimony, although self-serving, may be sufficient to create a genuine issue of material fact such that the movant is not entitled to summary judgment as a matter of law. Weddborn v. Doe , 2015-1088, p. 4 (La. App. 4 Cir. 5/4/16), 194 So.3d 80, 84 (stating "[w]hile we acknowledge that those affidavits are self-serving, we find that they are sufficient to create an issue of material fact....").
The record before this Court evidences that genuine issues of material fact remain as to Ms. Brown's pregnancy discrimination claim. Specifically, genuine issues of material fact remain as to whether other *994 employees were treated differently and disparate treatment occurred under TBC's policies. As quoted in the majority opinion, the policy TBC alleges that Ms. Brown violated states:
ABSENTEEISM AND TARDINESS... Except where not practical under FMLA, employees must call their manager at least one hour before their scheduled shift if they are not going to report to work or if they must leave before the end of their scheduled shift. If the manager is unavailable at the time of their call, they must contact their department director or the individual who is on call in their department. Failure to report your absence before your shift begins or leaving work without authorization are grounds for immediate termination.
TBC also requires that employees maintain clean uniforms which are appropriate for the workplace or face immediate termination. See fn. 4, infra .
Ms. Brown brings her pregnancy discrimination claim under La. R.S. 23:342. Louisiana courts, for guidance in these claims, look to the framework set forth in federal cases for discrimination under Title VII of the Civil Rights Act of 1964. See, e.g., Delaney v. City of Alexandria, 2001-1076, p. 3, fn. 3 (La. 11/28/01), 800 So.2d 806, 807 (finding it appropriate to look to federal jurisprudence for guidance in discrimination claims where the applicable Louisiana statute is very similar); Ott v. Families Helping Families of Greater New Orleans, 2005-1324, p. 5 (La. App. 4 Cir. 8/16/06), 940 So.2d 1, 5 (finding that, due to the similarity of federal statutes to Louisiana's anti-discrimination laws, Louisiana courts routinely look to federal jurisprudence for guidance in discrimination cases); Suire v. LCS Corr. Servs., Inc., 2005-1332, p. 3 (La. App. 3 Cir. 5/3/06), 930 So.2d 221, 224 (finding that a pregnancy discrimination claim under La. R.S. 23:342 should be reviewed "following the analysis set forth in federal cases for discrimination under Title VII").
As noted by the court in Suire , to make a successful pregnancy discrimination claim, Ms. Brown first must make a prima facie showing of discrimination by establishing the following factors: "(1) she was a member of a protected class, (2) she was qualified for the position she lost, (3) she suffered an adverse employment action, and (4) that others similarly situated were more favorably treated." 2005-1332 at p. 3, 930 So.2d at 224. This is the first step of the burden-shifting test established by United States Supreme Court case McDonnell Douglas Corp. v. Green . 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). After an employee makes such a showing, the burden shifts to the employer to state a legitimate, non-discriminatory reason for the adverse employment action. Id. If the employer successfully does so, the burden shifts back to the employee to show that the employer's stated reason for the adverse employment action was a pretext or discriminatory in its application. Id. at 807, 93 S.Ct. 1817. McDonnell Douglas addressed racial discrimination under Title VII. However, the test it employs has since been applied to other types of discrimination, both by the federal courts, see, e.g., Fairchild v. All Am. Check Cashing, Inc., 815 F.3d 959, 966 (5th Cir. 2016) (applying the McDonnell Douglas test in a pregnancy discrimination case brought under Title VII as modified by the federal Pregnancy Discrimination Act) and by Louisiana courts analyzing Louisiana anti-discrimination law. See, e.g., Motton v. Lockheed Martin Corp. , 2003-0962, p. 7 (La. App. 4 Cir. 3/2/05), 900 So.2d 901, 909 (applying the McDonnell Douglas test in a sex discrimination case).
*995 The fourth factor of the prima facia showing, the "same-treatment" analysis, is echoed in La. R.S. 23:342(2)(a), which provides that with respect to any "female employee affected by pregnancy, childbirth, or related medical conditions", an employer must provide such pregnant employee with "the same privileges that the employer grants to other persons not so affected who are similar in their ability or inability to work." The "same treatment" analysis often requires lower courts to make credibility determinations as to whether an employer provided more favorable treatment to other employees "whose situation cannot reasonably be distinguished" from the employee's situation that resulted in termination of employment. Young v. United Parcel Serv., Inc. , --- U.S ----, 135 S.Ct. 1338, 1355, 191 L.Ed.2d 279 (2015) (finding a genuine dispute of material fact where the evidence introduced by the employee created a question as to whether the employer "provided more favorable treatment to at least some employees whose situation cannot reasonably be distinguished from [the employee's situation]"). Pregnancy discrimination laws do not provide pregnant women with favorable treatment; however, these laws were enacted to ensure that pregnant women receive equal and same treatment in the workplace.[1] Thus, the "same treatment" analysis, which usually involves conflicting testimony making summary judgment improper, is crucial to a pregnancy discrimination claim.
Although the majority finds that "there is no evidence to show that others similarly situated were treated differently," Ms. Brown testified in her deposition that other employees were not terminated when they failed to notify supervisors prior to leaving work. Ms. Brown specifically identified at least one employee who was not terminated after he failed to notify a supervisor when he missed work.[2] TBC's argues that the employee Ms. Brown identified is not similarly situated. However, this inquiry is a factual determination that is improper for summary judgment. See, e.g., id.[3] A factual determination as to the nature of Ms. Brown's emergency medical situation at work is also necessary to determine whether TBC treated Ms. Brown the same as other similarly situated employees. Given the evidence presented by Ms. Brown and the nature of her claim, the "same-treatment" analysis requires the district court to make credibility determinations as to whether TBC provided more favorable treatment to other employees in reasonably similar situations.
The majority finds that Ms. Brown's testimony alone is not sufficient to create a genuine issue of material fact. In support, they cite Schwarzenberger v. Louisiana State Univ. Health Scis. Ctr. New Orleans, 2017-0024 (La. App. 4 Cir. 8/24/17), 226 So.3d 1200. In Schwarzenberger, the district *996 court "properly discounted the self-serving and uncorroborated testimony of the appellant regarding loss of profits" when granting summary judgment as to the appellant's contract claims. Id. at 2017-0024, p. 14, 226 So.3d at 1210. As the Schwarzenberger court went on to state, in contract claims, loss of profits is only recoverable if the plaintiff shows that a loss of profits "is more probable than not," which this Court found, on de novo review, that the affidavits were not sufficient to establish. Id. at 2017-0024, p. 15, 226 So.3d at 1210.
This Court has not automatically disregarded all self-serving testimony on summary judgment. As this Court found in Weddborn v. Doe , an admittedly self-serving affidavit can create a genuine issue of material fact where it is not sufficiently countered by the movant. Doe, 2015-1088, p. 4, 194 So.3d at 84 (stating that the district court erred in granting summary judgment "as neither insurer properly supported its respective motion, given Ms. Weddborn's affidavits submitted in opposition to each motion. While we acknowledge that those affidavits are self-serving, we find that they are sufficient to create an issue of material fact....). Accordingly, the majority's reliance on Schwarzenberger for the general proposition that all self-serving testimony must be disregarded is misplaced. Additionally, in the case sub judice , the testimony at issue arose during a deposition where TBC was represented and had the opportunity to cross-examine. Accordingly, any issue regarding the self-serving nature of the testimony should have been addressed with contradictory evidence arising from such cross-examination.
Moreover, TBC's policies are contradictory such that a factual determination as to whether disparate treatment occurred must be made. The record indicates that TBC's policies require that employee uniforms be clean, decent, and appropriate.[4] If employees violate this policy, they are subject to immediate termination. However, under the policies relevant to the case sub judice , TBC does not allow an employee to leave without delay should their uniform become soiled and thus in violation of its dress code. The policies when read together seem to result in a precarious situation in which Ms. Brown would have been immediately terminated had she been observed in her soiled clothing while making a call to a supervisor. The demonstrable absurdity of this result underscores the inappropriateness of summary judgment in this case.
Furthermore, the majority opinion evidences an improper merging of the steps *997 of the McDonnell Douglas test. The majority writes as if it believes that Ms. Brown cannot prove that TBR's nondiscriminatory reason is a pretext for discrimination. Accordingly, the majority concludes that there is no genuine issue of material fact. Such analysis is improper on summary judgment. See Istre v. Meche, 2005-2508, p. 5 (La. 6/16/06), 931 So.2d 361, 364 (stating that "[w]hether a given action is reasonable under the circumstances is a factual determination which should not be made in the context of a summary judgment proceeding.").
In conclusion, there are genuine issues of material fact as to whether Ms. Brown received equal treatment from TBC. Considering the contradictions evident in TBC's policies, the likelihood of disparate treatment given those contradictions, and the fact that the likelihood of disparate treatment significantly weakens TBC's stated justification for terminating Ms. Brown, this pregnancy discrimination claim raises genuine issues of material fact requiring a full trial on its merits. For these reasons, I respectfully dissent.

See Young, 135 S.Ct. at 1361-62 (J. Scalia dissenting) (stating that the purpose of the Pregnancy Discrimination Act is to ensure that pregnant women are "treated the same" as others of similar ability or inability).

Contrast King v. Phelps Dunbar, L.L.P., 2001-1735, pp. 17-18 (La. App. 4 Cir. 4/2/03), 844 So.2d 1012, 1023 (finding that where member of an ethnic minority presented only his conclusory allegations that he was treated unequally from other associates at his law firm, no genuine issue of material fact remained as to unequal treatment preventing summary judgment).

Compare Perez v. Tex. Dep't of Criminal Justice, 395 F.3d 206, 213 (5th Cir. 2004) (finding that "in disparate treatment cases involving separate incidents of misconduct ... for employees to be similarly situated those employees' circumstances, including their misconduct, must have been 'nearly identical' "). The question of two employees' misconduct is sufficiently similar is factual in nature.

TBC's Employee Handbook states, in relevant part:
The Following Is A Non-Exhaustive List of Causes for Immediate Dismissal
* * *
4. Immoral, indecent, or disorderly conduct, including fighting.
* * *
18. Disregard of Dress Code
Antonio White ("Mr. White"), Ms. Brown's immediate supervisor at the time when she was terminated from TBC, elaborated on the "immoral, indecent, or disorderly" policy in his deposition. He stated that it would be "indecent" for an employee to remain on the worksite in a uniform that is not clean, which, according to the above-quoted policy, would subject that employee to immediate termination. Mr. White further stated that had an employee soiled themselves when he was present at the work site, he would have authorized them to leave. Moreover, TBC's dress code policy requires employees to dress "appropriately for the work [the employees] will be doing that day." The above-quoted portion of TBC's employee handbook indicates that disregard of the dress code subjects an employee to immediate termination. It is an issue for trial as to whether soiled clothing would meet TBC's dress code requirement to dress appropriate for a blood center.