| MICHELLE LEININGER | * | NO. 2023-CA-0574 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| BRITTANIE HEANEY, THE | * | |
| SHERWIN-WILLIAMS | | FOURTH CIRCUIT |
| COMPANY, AND ACE | * | |
| AMERICAN/CHUBB | | STATE OF LOUISIANA |
| INSURANCE COMPANY | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-00141, DIVISION "M"
Honorable Paulette R. Irons, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *
(Court composed of Judge Daniel L. Dysart, Judge Sandra Cabrina Jenkins, Judge Dale N. Atkins)

Alicia M. Bendana
Jennifer E. Barriere
Lorin R. Scott
LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, LA 70130

COUNSEL FOR PLAINTIFF/APPELLANT, Michelle Leininger

Steven E. Holden (admitted *pro hac vice*)
Laura J. Grabouski (admitted *pro hac vice*)
HOLDEN LITIGATION, HOLDEN PC
10000 North Central Expressway, Suite 360
Dallas, TX 75231

Robert E. Williams, IV
SULZER & WILLIAMS, LLC
201 Holiday Boulevard, Suite 335
Covington, LA 70433

Scott R. Hunsaker (admitted *pro hac vice*)
TUCKER ELLIS LLP
100 South Fourth Street, Suite 600
St. Louis, MO 63102

Smita Gautam (admitted *pro hac vice*)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113


      COUNSEL FOR DEFENDANTS/APPELLEES, Brittanie Heaney, The Sherwin-Williams Company, and ACE American Insurance Company

**VACATED AND REMANDED**
**AUGUST 15, 2024**

*DNA*

*DLD*

*SCJ*

The case underlying this appeal involves an automobile accident. Appellant, Michelle Leininger ("Ms. Leininger"), seeks review of the trial court's May 31, 2023 judgment, which denied her Motions in Limine to exclude the testimony of Dr. Charles Bain ("Dr. Bain") and Dr. Kevin Greve ("Dr. Greve") and to exclude collateral source evidence about medical payments made by her attorney. In addition to seeking reversal of the May 31, 2023 judgment, Ms. Leininger seeks a reversal of the June 1, 2023 judgment rendered in accordance with the jury verdict. For the following reasons, we vacate the June 1, 2023 judgment and remand this matter for a new trial.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On January 9, 2019, Ms. Leininger and Brittanie Heaney ("Ms. Heaney") were in a motor vehicle accident in New Orleans, Louisiana. When the accident occurred, Ms. Heaney was in the course and scope of her employment with The Sherwin-Williams Company ("Sherwin-Williams"), who was insured by ACE American Insurance Company ("ACE"). On January 7, 2020, Ms. Leininger filed a Petition for Damages in Civil District Court for the Parish of Orleans, wherein she named Ms. Heaney, Sherwin-Williams, and ACE as defendants (collectively

1

"Defendants"). Therein, Ms. Leininger alleged that she suffered personal injuries as a result of the accident. Ultimately, Ms. Leininger specified that she suffered from and was diagnosed with neck and back injuries, as well as chronic intractable post-traumatic migraine headaches.

As the matter proceeded before the trial court, on January 31, 2023, Defendants filed a "Motion and Incorporated Memorandum to Supplement Witness List Instanter and Motion for Expedited Consideration" ("Motion to Supplement Witness List"). Therein, Defendants sought to supplement their witness list to include Dr. Bain and Dr. Greve. In their Motion to Supplement Witness List, Defendants described Dr. Bain as an accident reconstructionist, biomechanical engineer, and medical doctor. Defendants explained that Dr. Bain would "opine on the severity of the [a]ccident, [Ms. Leininger]'s risk of injury, and the cause of [Ms. Leininger]'s alleged brain and spinal injuries." Further, Defendants attached Dr. Bain's expert report, curriculum vitae, fee schedule, a list of prior testimony, and his deposition availability. Regarding Dr. Greve, Defendants listed him as a clinical psychologist and neuropsychologist. They explained that Dr. Greve would "opine on [Ms. Leininger]'s cognitive and psychological status and the cause of her past and ongoing post-concussion syndrome or post-traumatic headaches." Attached to Defendants' Motion to Supplement Witness List were Dr. Greve's declaration, curriculum vitae, fee schedule, and a list of prior testimony. Defendants' Motion to Supplement Witness List was timely per the district court's scheduling order. On February 9, 2023, the trial court held a hearing and ruled, in pertinent part, on Defendants' Motion to Supplement Witness List. The trial court orally granted Defendants' Motion to Supplement Witness List at the February 9, 2023 hearing but did not sign the

judgment to that effect until March 31, 2023. At the February 9, 2023 hearing, the trial court also instructed the parties that they needed to file any *Daubert* motions at least 65 days prior to trial.[1]

However, on April 17, 2023, the trial court signed a supplemental and amending scheduling order, which stated that *Daubert* motions for Dr. Bain and Dr. Greve were to be filed by May 5, 2023. Thereafter, on May 1, 2023, Ms. Leininger filed a "Motion and Incorporated Memorandum in Support of Plaintiff's Global Motion in Limine to Exclude Certain Evidence at Trial" ("First Motion in Limine"). Therein, Ms. Leininger moved the trial court to exclude Dr. Bain and Dr. Greve from testifying. In pertinent part, Ms. Leininger's only contentions that Dr. Greve should not be allowed to testify were that he is "a psychologist who does not possess a medical degree" and that his testimony would be "cumulative of" another doctor's testimony. Additionally, Ms. Leininger moved the trial court to exclude reference or testimony to collateral sources, including any reference to payments or guarantees of payment for medical expenses by [her] counsel," which she deemed would be "particularly prejudicial." Then, on May 4, 2023, Ms. Leininger filed an "Ex Parte Motion to Continue Trial" ("Motion to Continue") wherein she moved to continue the trial which was set for May 15, 2023. However, on May 5, 2023, Ms. Leininger then filed a "Motion to Withdraw *Ex Parte* Motion to Continue Trial" wherein she sought to withdraw her Motion to Continue and requested that the trial court set her *Daubert* motions to be heard on May 15, 2023, prior to the start of trial. Additionally, on May 5, 2023, Ms. Leininger filed a "Motion Pursuant to [La. C.C.P.] art. 1425 and/or Motion in Limine and/or

_____

[1] *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

3

Daubert Motion to Exclude Charles E. 'Ted' Bain" ("Second Motion in Limine").

In her supporting memorandum, Ms. Leininger contended that the trial court

should not allow Dr. Bain to testify regarding force-of-impact during the subject

accident and that Dr. Bain's testimony failed to meet the requirements of La. C.E.

art. 702 regarding the admissibility of expert testimony.

On May 15, 2023, trial began in this matter. In pertinent part, the following

colloquy occurred at the outset of the trial regarding the motions to exclude Dr.

Bain and Dr. Greve from testifying:

> THE COURT:
> Good morning. There are a few motions in limines [sic] that we need to make a ruling on. I read both the motion as well as the opposition. As it relate to Dr. Charles Bain I will allow him. It is my understanding you-all agreed that he would not discuss medical. Is that correct?
>
> [COUNSEL FOR DEFENDANTS]:
> He is not here as a medical doctor and not to talk about it.
>
> THE COURT:
> Is that correct, Counselor? He is not going to testify as a medical doctor? Do you have an agreement?
>
> [COUNSEL FOR MS. LEININGER]:
> I believe what you-all said is that he is not going to testify to the plaintiff's specific injuries but he will testify that he does not believe that anybody could be hurt in that type of accident. He said he --
>
> THE COURT:
> As a biomechanic engineer he is going to be allowed. . . .
>
> [THE COURT:]
> Dr. Kevin Greve is a neuropsychologist.
>
> [COUNSEL FOR DEFENDANTS]:
> Neuropsychologist, yes.
>
> THE COURT:
> He will be allowed as well. Any challenges on that will have to be done in the cross.

After orally denying Ms. Leininger's Motions in Limine regarding Dr. Bain and Dr. Greve, the trial court then moved onto other preliminary matters before the start of testimony.

The trial court also denied Ms. Leininger's Motion in Limine regarding collateral source evidence. As pertinent to this appeal, during closing statements, Defendants' counsel introduced Ms. Leininger's counsel's payments in the context of alleging that Ms. Leininger does not have to reimburse her attorney for money spent on her medical bills. Specifically, defense counsel stated that Ms. Leininger's counsel "paid for nearly all of the medical [bills]" and that the jury could "come back with zero for [Ms. Leininger]." Counsel for Defendants cautioned the jury not to "spend a second wondering" if Ms. Leininger would have to reimburse her attorney. Ultimately the jury awarded Ms. Leininger $35,000 for past medical expenses and $0 for future medical expenses even though Ms. Leininger sought $101,726.59 and $216,463.00, respectively.

The trial court signed a judgment denying Ms. Leininger's Motions in Limine regarding Dr. Bain, Dr. Greve, and collateral source evidence on May 31, 2023. Then, on June 1, 2023, the trial court signed a judgment in accordance with the jury verdict. It stated, in pertinent part:

> This action . . . came for trial on May 15, 2023 before a jury, the Honorable Paulette R. Irons, Civil District Court Judge, presiding, and the issues having been duly tried, and the jury having duly rendered its verdict,
>
> **IT IS ORDERED, ADJUDGED, AND DECREED** that the Plaintiff, Michelle Leininger ("Leininger"), recover from the Defendants, Brittanie Heaney, The Sherwin-Williams Company, and Ace American/Chubb Insurance Company ("Defendants") and Defendants pay to Leininger, the full principal amount of SEVENTY-TWO THOUSAND EIGHTEEN AND 97/100 ($72,018.97) DOLLARS, plus judicial interest, pursuant to La. Code Civ. Pro. Art.

5

1921 and as set forth at La. R.S. 13:4202, from the date of judicial demand (January 7, 2020) until such time as the judgment is paid.

Ms. Leininger's timely appeal to this Court followed.

## ASSIGNMENTS OF ERROR

On appeal, Ms. Leininger asserts three assignments of error:

1. The trial court committed reversible, legal error in denying Ms. Leininger's *Daubert* motion seeking to exclude the introduction of testimony by Dr. Charles Bain in any manner.

2. The trial court committed reversible, legal error in denying Ms. Leininger's *Daubert* motion seeking to exclude or limit the testimony of Kevin Greve, Ph.D.

3. The trial court committed reversible, legal error in denying Ms. Leininger's motion in limine seeking to exclude testimony, argument or opinion as to payment of her medical bills by collateral sources, specifically by her attorney.

We address each of these in turn.

## DISCUSSION

### *Assignment of Error Number One: Dr. Bain*

In her first assignment of error, Ms. Leininger asserts that "[t]he trial court committed reversible, legal error in denying [her] *Daubert* motion seeking to exclude the introduction of testimony by Dr. Charles Bain in any manner." In her sub-arguments under this assignment of error, Ms. Leininger first contends that "Dr. Bain's testimony was irrelevant to causation in light of the undisputed medical and lay testimony that Ms. Leininger sustained some injuries in the accident." Second, Ms. Leininger argues that Dr. Bain's testimony was not based on sufficient facts or data but on assumptions derived from his remote review." In her third sub-argument, Ms. Leininger asserts that "Dr. Bain's biomechanical/accident reconstruction methods were not testable, do not have a

6

known rate of error, are not generally accepted by the community, and were not subjected to appropriate peer review of criticism."

As a preliminary matter, we address Ms. Leininger's contention in her brief that the trial court "fail[ed] to state any reasons for judgment, findings of fact, or conclusions of law as required by [La. C.C.P. art.] 1425(F)" when deciding to permit Dr. Bain to testify. This argument has merit and establishes the standard of review for Ms. Leininger's first assignment of error.

"Under the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993),[ ] and adopted by our Louisiana Supreme Court in *State v. Foret*, 628 So.2d 1116, 1122 (La. 1993),[ ] the trial court is required to perform a 'gatekeeping' function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *Allen v. Eagle Inc.*, 2022-0386, 0387, p. 9 (La. App. 4 Cir. 8/10/22), 346 So.3d 808, 814-15 (quoting *Versluis v. Gulf Coast Transit Co.*, 2008-0729, p. 5 (La. App. 4 Cir. 7/29/09), 17 So.3d 459, 463). Louisiana Code of Civil Procedure Article 1425 provides, in pertinent part:

> F. (1) Any party may file a motion for a pretrial hearing to determine whether a witness qualifies as an expert or whether the methodologies employed by such witness are reliable under Articles 702 through 705 of the Louisiana Code of Evidence. The motion shall be filed not later than sixty days prior to trial and shall set forth sufficient allegations showing the necessity for these determinations by the court.

> (2) The court shall hold a contradictory hearing and shall rule on the motion not later than thirty days prior to the trial. At the hearing, the court shall consider the qualifications and methodologies of the proposed witness based upon the provisions of Articles 104(A) and 702 through 705 of the Louisiana Code of Evidence. For good cause shown, the court may allow live testimony at the contradictory hearing.

7

(3) If the ruling of the court is made at the conclusion of the hearing, the court shall recite orally its findings of fact, conclusions of law, and reasons for judgment. If the matter is taken under advisement, the court shall render its ruling and provide written findings of fact, conclusions of law, and reasons for judgment not later than five days after the hearing.

(4) The findings of facts, conclusions of law, and reasons for judgment shall be made part of the record of the proceedings. The findings of facts, conclusions of law, and reasons for judgment shall specifically include and address:

(a) The elements required to be satisfied for a person to testify under Articles 702 through 705 of the Louisiana Code of Evidence.

(b) The evidence presented at the hearing to satisfy the requirements of Articles 702 through 705 of the Louisiana Code of Evidence at trial.

(c) A decision by the judge as to whether or not a person shall be allowed to testify under Articles 702 through 705 of the Louisiana Code of Evidence at trial.

(d) The reasons of the judge detailing in law and fact why a person shall be allowed or disallowed to testify under Articles 702 through 705 of the Louisiana Code of Evidence.

(5) A ruling of the court pursuant to a hearing held in accordance with the provisions of this Paragraph shall be subject to appellate review as provided by law.

(6) Notwithstanding the time limitations in Subparagraphs (1), (2), and (3) of this Paragraph, by unanimous consent of the parties, and with approval by the court, a motion under this Paragraph may be filed, heard, and ruled upon by the court at any time prior to trial. *The ruling by the court on such motion shall include findings of fact, conclusions of law, and reasons for judgment complying with the provisions of Subparagraph (4) of this Paragraph.*

La. C.C.P. art. 1425(F) (emphasis added). Per La. C.C.P. art. 1425(F), when ruling

on whether a witness will qualify as an expert or whether the witness'

methodologies are reliable, a trial court must provide its findings of fact,

conclusions of law, and reasons for judgment. The findings of facts, conclusions of

law, and reasons for judgment must specifically include and address the elements

8

required to be satisfied for a person to testify under La. C.E. arts. 702-705; the evidence presented to satisfy the requirements of La. C.E. arts. 702-705; the trial court's decision as to whether the person will be allowed to testify under La. C.E. arts. 702-705; and the trial court's reasons detailing in law and fact why the person shall be allowed or disallowed to testify under La. C.E. arts. 702-705.

As this Court has previously explained, "[i]t is well-established that the trial court is afforded wide discretion in determining whether expert testimony should be admitted and who should not be qualified as an expert." *Schwarzenberger v. La. State Univ. Health Scis. Ctr. New Orleans*, 2017-0024, p. 6 (La. App. 4 Cir. 8/24/17), 226 So.3d 1200, 1205 (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)). Thus, "[a] trial court's decision to qualify or disqualify an expert will not be overturned absent an abuse of discretion." *Id.* (citing *Cheairs v. State ex rel. Dep't of Transp. & Dev.*, 2003-0680, p. 6 (La. 12/3/03), 861 So.2d 536, 541). This is because "[w]hether an expert meets the qualifications of an expert witness and the competency of the expert witness to testify in specialized areas is within the sound discretion of the trial court." *Id.* at p. 7, 226 So.3d at 1205 (alteration in original) (quoting *Everhardt v. La. Dep't of Transp. & Dev.*, 2007-0981, p. 15 (La. App. 4 Cir. 2/20/08), 978 So.2d 1036, 1048).

However, to comply with La. C.C.P. art. 1425(F), the trial court cannot "provide[] only general reasoning to accept . . . an expert" because this "is insufficient to meet the detailed requirements . . . of La. C.C.P. art. 1425(F)." *Murphy Cormier Gen. Contractor, Inc. v. State, Dep't of Health & Hosps.*, 2012-1000, p. 11 (La. App. 3 Cir. 5/22/13), 114 So.3d 567, 577. If the trial court failed to comply with the requirements of La. C.C.P. art. 1425(F) and conducted no

*Daubert* analysis, this constitutes a legal error. *Id. See also Taylor v. Exxon Mobil Corp.*, 2023-0759, p. 3 (La. App. 4 Cir. 12/27/23), 381 So.3d 108; *Carpenter v. Thomas*, 2022-0872, p. 7 (La. App. 1 Cir. 3/13/23), 362 So.3d 977, 982 (citations omitted); *Robertson v. Doug Ashy Bldg. Materials, Inc.*, 2010-1552, p. 23 (La. App. 1 Cir. 10/4/11), 77 So.3d 339, 355 (citing *Corkern v. T.K. Valve*, 2004-2293, pp. 6-7 (La. App. 1 Cir. 3/29/06), 934 So.2d 102, 107); *Arceneaux v. Shaw Grp.*, 2012-0135, pp. 7-8 (La. App. 1 Cir. 9/24/12), 103 So.3d 1086, 1091. In such an instance, the appellate court reviews the matter *de novo. Allen*, 2022-0386, 0387, pp. 8-9, 346 So.3d at 814.

As stated previously, the trial court denied Ms. Leininger's Motion in Limine regarding Dr. Bain from the bench prior to the start of trial on May 15, 2023. When the trial court denied Ms. Leininger's Motion in Limine and decided to permit Dr. Bain to testify, the following colloquy occurred:

THE COURT:
Good morning. There are a few motions in limines [sic] that we need to make a ruling on. I read both the motion as well as the opposition. As it relate to Dr. Charles Bain I will allow him. It is my understanding you-all agreed that he would not discuss medical. Is that correct?

[COUNSEL FOR DEFENDANTS]:
He is not here as a medical doctor and not to talk about it.

THE COURT:
Is that correct, Counselor? He is not going to testify as a medical doctor? Do you have an agreement?

[COUNSEL FOR MS. LEININGER]:
I believe what you-all said is that he is not going to testify to the plaintiff's specific injuries but he will testify that he does not believe that anybody could be hurt in that type of accident. He said he --

THE COURT:
As a biomechanic engineer he is going to be allowed. . . .

As the above transcript excerpt demonstrates, in ruling on Ms. Leininger's Motion in Limine regarding Dr. Bain prior to the start of trial, the trial court did not include any findings of facts, conclusions of law, and reasons for judgment as required by La. C.C.P. art. 1425(F). Rather, the trial court merely explained that Dr. Bain would be allowed to testify as a biomechanic engineer and confirmed that the parties agreed that Dr. Bain would not testify as a medical doctor. Accordingly, we review Ms. Leininger's first assignment of error *de novo*.

At the outset, it should be noted that while the parties agreed that Dr. Bain would not testify as a medical doctor, counsel for Ms. Leininger later objected to Defendants' counsel moving to admit Dr. Bain as an expert in accident reconstruction and biomechanical impact. In particular, counsel for Ms. Leininger "object[ed] to Dr. Bain being allowed to testify because his methodology in the case is totally unreliable." By so objecting, counsel for Ms. Leininger preserved this issue for review. *See State v. Boudoin*, 2011-967, pp. 18-19 (La. App. 5 Cir. 12/27/12), 106 So.3d 1213, 1225-26 (holding the appellant preserved the issue for appeal because the appellant stipulated to the witness' expertise at the *Daubert* hearing but then objected to her testimony at trial); *cf. Everhardt v. La. Dep't of Transp. & Dev.*, 2007-0981, pp. 10-11 (La. App. 4 Cir. 2/20/08), 978 So.2d 1036, 1045-46 (explaining that after the trial court denied the appellant's motion in limine to strike an expert's testimony and the appellant did not object to the appellee tendering the plaintiff as an expert, the appellant effectively waived any objections it might otherwise have had as to his expert qualifications or the admissibility of his expert testimony). However, because Ms. Leininger did not specifically object on the basis that "Dr. Bain's testimony was irrelevant to causation in light of the undisputed medical and lay testimony that Ms. Leininger

11

sustained some injuries in the accident" (an argument which she first asserted in her Second Motion in Limine and now reasserts on appeal), Ms. Leininger waived this, and we will not address it. For the same reason, we will not address Ms. Leininger's argument that Dr. Bain's testimony was not based on sufficient facts or data but on assumptions derived from his remote review. Rather, we only address Ms. Leininger's argument that Dr. Bain's biomechanical/accident reconstruction methods were not testable, do not have a known rate of error, are not generally accepted by the community, and were not subjected to appropriate peer review of criticism because this is the basis on which she objected to his admission as an expert.

In *LaBauve v. Louisiana Medical Mutual Insurance Co.*, the Louisiana Supreme Court explained the analysis Louisiana courts must perform per *Daubert*:

> In *State v. Foret*, 628 So.2d 1116, 1122-23 (La. 1993), we adopted the four non-exclusive factors established by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), to be considered by district courts in determining the admissibility of expert testimony:
>
> (1) the "testability" of the scientific theory or technique;
>
> (2) whether the theory or technique has been subjected to peer review and publication;
>
> (3) the known or potential rate of error; and
>
> (4) whether the methodology is generally accepted in the scientific community

2021-00763, pp. 3-4 (La. 4/13/22), 347 So.3d 724, 728. In discussing *Daubert*, this Court has held that the proponent of the expert's testimony "bear[s] the burden of proving that the methodology employed by the proposed expert is generally accepted in the appropriate or relevant scientific community*." Boudreaux v.*

12

*Bollinger Shipyard*, 2015-1345, 0958, p. 2 (La. App. 4 Cir. 6/22/16), 197 So.3d 761, 764 (first citing *State v. Hampton*, 2015-1222, p. 17 (La. App. 4 Cir. 12/23/15), 183 So.3d 769, 779; and then citing *Wingfield v. State ex rel. Dep't of Transp. & Dev.*, 2001-2668, p. 10 (La. App. 1 Cir. 11/8/02), 835 So.2d 785, 797).

Per *Boudreaux*, Defendants bore the burden of proving that Dr. Bain's methodology was generally accepted in the appropriate or relevant scientific community. Defendants did not demonstrate that before the trial court nor have they done so before this Court. Instead, Defendants explain that Dr. Bain is an engineer and that he reviewed the State of Louisiana Motor Vehicle Traffic Crash Report; repair estimates and appraisals for both vehicles; Ms. Leininger's and Ms. Heaney's depositions; photographs of the scene of the accident and of the vehicles involved; and Ms. Leiniger's relevant medical records. Further, Defendants explain that Dr. Bain "obtained an exemplar three-dimensional model of" of one of the vehicles, which "was scaled and validated according to vehicle specifications." Then, according to Defendants, "[a] plane representing the crush depth was oriented to [Ms. Leininger's car] to determine the crush depth and width." Defendants state that "Dr. Bain used the software package EDCRASH to calculate the crush force for [Ms. Leininger's car] based on [its] crush profile." Additionally, Defendants explain that "Dr. Bain utilized EDSMAC4, a software package used to reconstruct vehicle collisions, to simulate the dynamics of the collision," which "methodology is widely accepted for use in accident reconstruction" (according to Dr. Bain's own report).

Of the four matters required by the *Daubert-Foret* analysis, Defendants fail to speak to (1) the "testability" of the scientific theory or technique; (2) whether Dr. Bain's theory or technique has been subjected to peer review and publication;

13

and (3) the known or potential rate of error. Defendants contend that Dr. Bain's accident reconstruction method is widely accepted (i.e., the fourth element of the *Daubert-Foret* analysis), but their support for this is Dr. Bain's own report, such that it is self-serving. Considering the foregoing, the trial court erred in denying Ms. Leininger's Motion in Limine regarding Dr. Bain and by allowing him to testify. Because this error could have interdicted the jury's decision, we vacate the trial court's June 1, 2023 judgment and remand this matter for a new trial.

### *Assignment of Error Number Two: Dr. Greve*

In her second assignment of error, Ms. Leininger asserts that "[t]he trial court committed reversible legal error in denying the [Dr.] Greve [*Daubert*] motion and allowing [Dr.] Greve to offer improper opinion testimony." In her sub-arguments to this assignment of error, Ms. Leininger first contends that Dr. Greve was not qualified to render an opinion on medical causation because his education and professional background was in clinical psychology and neuropsychology. Second, Ms. Leininger argues that Dr. Greve's "improper opinions conflate[d] Ms. Leininger's psychological and physical condition." Third and finally, Ms. Leininger asserts that Dr. "Greve's improper proposed and actual opinion that his testing revealed Ms. Leininger to have suffered no cognitive deficits or disability was irrelevant and prejudicial."

However, in her First Motion in Limine filed with the trial court, Ms. Leininger's only contentions that Dr. Greve should not be allowed to testify were that he is "a psychologist who does not possess a medical degree" and that his testimony would be "cumulative of" the testimony of another doctor. Ms. Leininger's Second Motion in Limine only concerned Dr. Bain. Thus, when the trial court ruled on Ms. Leininger's Motions in Limine, Ms. Leininger's only

arguments as to why Dr. Greve should not be allowed to testify were confined to the two in her First Motion in Limine, i.e., that he is not a medical doctor and that his testimony was redundant. Though Ms. Leininger opposed Dr. Greve's expert's testimony by Motion in Limine pursuant to *Daubert*, "*Daubert* concerns admissibility of the expert's opinion and not his qualification as an expert in the area tendered." *MSOF Corp. v. Exxon Corp.*, 2004-0988, p. 12 (La. App. 1 Cir. 12/22/05), 934 So.2d 708, 718 (citing *Comeaux v. C.F. Bean Corp.*, 1999-0924 (La. App. 4 Cir. 12/15/99), 750 So.2d 291, 296 n.3). Additionally, "[o]nly a question of the validity of the methodology employed [by an expert] brings *Daubert* into play." *Id.* (citing *Tadlock v. Taylor*, 2002-0712, p. 5 (La. App. 4 Cir. 9/24/03), 857 So.2d 20, 26*). See also Cheairs*, 2003-0680, p. 8, 861 So.2d at 541 (noting that "the *Daubert* court was clearly not concerned with the issue raised by [the appellant] herein—whether the expert is qualified solely by education to give opinion testimony concerning a particular matter" and finding "an important consideration in" the case was "the fact that [the appellant did] not question methodology regarding [the appellee's expert]'s testimony, methodology being the primary concern of the *Daubert* case).

As the Louisiana Supreme Court has explained, if a Motion in Limine does not invoke *Daubert* based on the foregoing, these principles "should not, however, be interpreted to mean that a court should not consider an expert's qualifications when deciding whether to admit a particular expert's testimony, only that the *Daubert* case does not directly address that issue." *Cheairs*, 2003-0680, p. 8, 861 So.2d at 542. Rather, the determination of the admissibility of the expert's testimony should be based on La. C.C.P. art. 702. *Id.* at p. 8, 861 So.2d at 541-42 (citation omitted). Because Ms. Leininger's Motion in Limine neither questioned

15

Dr. Greve's qualification as an expert in psychology/neuropsychology nor questioned the validity of the methodology employed by Dr. Greve, *Daubert* did not apply to the trial court's assessment of whether Dr. Greve should be permitted to testify. Therefore, Ms. Leininger is incorrect in arguing that *Daubert* applied to her Motion in Limine regarding Dr. Greve. Nonetheless, the trial court failed to comply with La. C.C.P. art. 1425(F)'s mandate to provide findings of fact, conclusions of law, and reasons for judgment. When deciding that Dr. Greve would be permitted to testify, the trial court merely stated, "Dr. Kevin Greve is a neuropsychologist," and "[h]e will be allowed as well." Because the trial court erred in failing to comply with the requirements of La. C.C.P. art. 1425(F), as with assignment of error number one, we conduct another *de novo* review. *See Allen*, 2022-0386, p. 9, 346 So.3d at 814.

Louisiana Code of Evidence Article 702 provides the standard for admissibility of expert testimony. If a witness "is qualified as an expert by knowledge, skill, experience, training, or education" then the witness "may testify in the form of an opinion or otherwise if:"

> (1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (2) The testimony is based on sufficient facts or data;
>
> (3) The testimony is the product of reliable principles and methods; and
>
> (4) The expert has reliably applied the principles and methods to the facts of the case.

La. C.E. art. 702(A). As the Louisiana Supreme Court has explained, "the admissibility of expert testimony under [La. C.C.P.] art. 702 'turns upon whether it would assist the trier of fact to understand the evidence or to determine a fact in

issue.'" *Cheairs*, 2003-0680, p. 8, 861 So.2d at 541-42 (citation omitted). Regarding evidence that is allegedly cumulative of other evidence, this Court has held that "where evidence is admitted that is merely cumulative of other evidence in the record, any error in its admission is generally viewed as harmless." *Everhardt*, 2007-0981, p. 15, 978 So.2d at 1048 (first citing *Kaufman v. Sewerage & Water Bd. of N.O.*, 1999-1942, p. 15 (La. App. 4 Cir. 5/3/00), 762 So.2d 644, 653; and then citing *Graves v. Riverwood Int'l Corp.*, 41,810, p. 6 (La. App. 2 Cir. 1/31/07), 949 So.2d 576, 582).

The record indicates that Dr. Greve was qualified as an expert by knowledge, skill, experience, training, or education" to testify in the field of psychology/neuropsychology. Dr. Greve is a clinical neuropsychologist with multiple degrees in psychology (a bachelor's degree in psychology, a master's degree in clinical psychology, and a doctorate in clinical psychology, with a specialization in clinical neuropsychology). The record further reveals that Dr. Greve is a Diplomate in Clinical Neuropsychology from the American Board of Professional Psychology and a Fellow of the National Academy of Neuropsychology. When the trial in this matter commenced, Dr. Greve had worked in the field for forty years, including more than two decades as a University Research Professor in the Department of Psychology at the University of New Orleans. Additionally, at the time of trial, Dr. Greve had published more than 120 papers in peer-reviewed neuropsychology, psychology, and medical journals, including papers on the assessment of the effects of traumatic brain injury and chronic pain. Also, in his clinical practice as a licensed neuropsychologist in Louisiana, Dr. Greve conducted approximately fifty psychological evaluations a year (mostly claims of traumatic brain injury and/or chronic pain), as well as

clinical evaluations of dementia, depression, post-traumatic stress disorder, and the psychological effects of medical illness. Regarding how Dr. Greve's knowledge would "help the trier of fact to understand the evidence or to determine a fact in issue," Defendants explained in their Motion to Supplement Witness List that Dr. Greve would testify that contrary to Ms. Leininger's allegation that a concussion during the accident is what caused her to have ongoing head injuries, Ms. Leininger's ongoing problems could stem from preexisting, untreated neuropsychological issues.

Further, the record indicates that Dr. Greve's testimony was "based on sufficient facts or data;" was "the product of reliable principles and methods;" and reliably applied the principles and methods to the facts of the case. La. C.E. art. 702(A)(3-4). In preparing his opinions, Dr. Greve reviewed the State of Louisiana Motor Vehicle Traffic Crash Report; police body-worn camera footage from the scene of the accident; Ms. Leininger's depositions; the depositions of Ms. Leininger's designated experts; the report of Defendants' expert neurologist; and Ms. Leininger's relevant medical records. Additionally, Dr. Greve performed a clinical interview with Ms. Leininger that lasted one hour and was followed by two days of neuropsychologist testing of Ms. Leininger. Dr. Greve interpreted the results based on the guidance of the American Academy of Clinical Neuropsychology. He then determined how Ms. Leininger's cognitive, behavioral, psychological, and emotional state may have related to her ongoing headaches in the four years post-accident rather than the alleged concussion she endured during the accident. The record demonstrates that Dr. Greve's testimony would assist the trier of fact in understanding whether Ms. Leininger's persistent headaches were associated with the accident or unrelated to it. Finally, regarding Ms. Leinigner's

contention that Dr. Greve's testimony was cumulative of another doctor's testimony, even if this were true, any error in admitting Dr. Greve's testimony was harmless per this Court's jurisprudence.

In light of the foregoing, we find that the trial court committed legal error in failing to state its findings of fact, conclusions of law, and reasons for judgment regarding Dr. Greve in accordance with La. C.C.P. art. 1425(F). Nonetheless, we conclude that the trial court did not err in denying Ms. Leininger's Motion in Limine as it relates to Dr. Greve. Dr. Greve was qualified as an expert by his knowledge, skill, experience, training, or education in the field of psychology/neuropsychology. This scientific, technical, or other specialized knowledge served to assist the trier of fact in understanding another potential cause of Ms. Leininger's persistent head issues that was unrelated to the subject accident. Additionally, Dr. Greve's testimony was based on sufficient facts or data; his testimony was the product of reliable principles and methods; and he reliably applied the principles and methods to the facts of the case. Thus, the trial court did not err in its May 31, 2023 judgment in denying Ms. Leininger's Motion in Limine with regard to Dr. Greve.

***Assignment of Error Number Three: Collateral Source***

In her third and final assignment of error, Ms. Leininger argues that "[t]he trial court committed reversible, legal error in denying Ms. Leininger's motion in limine seeking to exclude testimony, argument or opinion as to payment of her medical bills by collateral sources, specifically by her attorney." Ms. Leininger contends that "Louisiana jurisprudence is clear that evidence of collateral source payments is neither admissible nor relevant to the litigation and in the absence of an exception, admission of collateral source testimony constitutes a reversible

19

error" and that "[t]his principle is rooted in [La. C.E. art.] 409" (footnotes omitted). Ms. Leininger states that Defendants' counsel ended his closing argument by mentioning that Ms. Leininger's attorney paid her medical bills and that Ms. Leininger would not have to reimburse her attorney. According to Ms. Leininger, "[t]he introduction of payments by Ms. Leininger's counsel, and the representation that she would not have to pay the bills back, guided the jury in its low award to Ms. Leininger which did not even cover past medical payments" (footnotes omitted). Countering, Defendants assert that this situation is not covered by the collateral source rule because "[t]he collateral source rule does not extend to attorney-negotiated discounts during litigation." Additionally, Defendants argue that because Ms. Leininger's counsel referred her to her treating physicians, Dr. Beaucoudray and Dr. Mohnot, such a referral "can be relevant to the issue of bias" and was therefore admissible as an exception to La. C.E. art. 409.

"The 'collateral source' rule means that the tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be diminished, because of benefits received by the plaintiff from sources independent of the tortfeasor's procuration or contribution." *Francis v. Brown*, 1995-1241, p. 7 (La. App. 3 Cir. 3/20/96), 671 So.2d 1041, 1046 (citing *Kidder v. Boudreaux*, 1993-859 (La. App. 3 Cir. 5/19/94), 636 So.2d 282, 284). As Ms. Leininger correctly observes, the collateral source rule stems from La. C.E. art. 409, which pertains to "[p]ayment of medical and similar expenses." It provides:

> In a civil case, evidence of furnishing or offering or promising to pay expenses or losses occasioned by an injury to person or damage to property is not admissible to prove liability for the injury or damage nor is it admissible to mitigate, reduce, or avoid liability therefor. This Article does not require the exclusion of such evidence when it is offered solely for another purpose, such as to enforce a contract for payment.

La. C.E. art. 409.

To determine whether the collateral source rule applies, Louisiana courts are to "consider whether the 'victim has procured the collateral benefits for himself or has in some manner sustained a diminution in his or her patrimony in order to secure the collateral benefits such that he or she is not merely reaping a windfall or double recovery.'" *George v. Progressive Waste Sols. of La, Inc.*, 2022-01068, p. 8 (La. 12/9/22), 355 So.3d 583, 589 (quoting *Bellard v. Am. Cent. Ins. Co.*, 2007-1335, 1399, p. 20 (La. 4/18/08), 980 So.2d 654, 669). In interpreting La. C.E. art. 409, the Louisiana Supreme Court has held that "an attorney-negotiated medical discount or 'write-off' is not a payment or benefit that falls within the ambit of the collateral source rule." *Hoffman v. 21st Century N. Am. Ins. Co.*, 2014-2279, p. 10 (La. 10/2/15), 209 So.3d 702, 708. However, the collateral source rule does prevent reference to payments made by a plaintiff's attorney to cover medical expenses. *Francis*, 1995-1241, pp. 9-10, 671 So.2d at 1047-48. While La. C.E. art. 409 "does not require the exclusion of [collateral source] evidence when it is offered solely for another purpose," Defendants did not offer it for another purpose. Rather, during closing statements, Defendants' counsel introduced Ms. Leininger's counsel's payments in the context of alleging that Ms. Leininger will not have to reimburse her attorney for that money spent, not in the context that payments by Ms. Leininger's counsel could indicate bias by Ms. Leininger's treating physicians (an argument which Defendants now assert on appeal). This argument about bias was merely made in hindsight on appeal to try to avoid the collateral source issue here. Defendants did not argue bias before the jury when discussing Ms. Leininger's counsel's payments. Moreover, the United States District Court for the Middle District of Louisiana ("Middle District") rejected

such an argument in *Feagins v. Wal-Mart Stores, Inc.*, (M.D. La. Sept. 20, 2017), 2017 WL 8944098, at *1. Therein, discussing *Francis*, the Middle District explained that payment by an attorney of his or her client's medical bills "is precisely the ground upon which the court in *Francis* found that the evidence had been improperly admitted." *Id.* The Middle District further explained that "any possible probative value connected to counsel's payment of the medical bills [wa]s outweighed by unfair prejudice" and excluded the evidence. *Id.*

In the matter *sub judice*, Ms. Leininger sought to exclude evidence of her medical expenses that were paid by her attorney and for which she alleged that she has an obligation to pay back. This is precisely the type of evidence that the Louisiana Third Circuit Court of Appeal ("Third Circuit") and the Middle District have held is covered by the collateral source rule in *Francis* and *Feagins*, respectively. Moreover, both of Ms. Leininger's treating physicians confirmed in their depositions that they did not have an attorney-negotiated medical discount or "write-offs" with Ms. Leininger's counsel. Thus, the Louisiana Supreme Court's holding in *Hoffman* (i.e., attorney-negotiated medical discounts or write-offs do not fall under the collateral source rule) is inapplicable here. Accordingly, the trial court erred in denying Ms. Leininger's Motion in Limine regarding exclusion of collateral source evidence of Ms. Leininger's counsel paying for her medical bills.

When this issue comes to the appellate court at the post-trial phase, an appellate court can undertake a *de novo* review of the evidence and implement its own damages award. *See Francis*, 1995-1241, p. 11, 671 So.2d at 1048 (the Third Circuit undertook a *de novo* review of the evidence and implemented its own award, explaining "[h]aving found the trial court committed reversible error, we therefore find the jury committed manifest error or they were clearly wrong on the

amount of damages awarded [to the plaintiff]"); *Guillory v. Lee*, 2008-661 (La. App. 3 Cir. 12/10/08), 998 So.2d 891 (wherein the Third Circuit amended the jury's award, but the Louisiana Supreme Court concluded that the Third Circuit erred in amending the jury's verdict because a reasonable factual basis existed for the jury's award). However, having already concluded in assignment of error number one that remand for a new trial is necessary, we pretermit discussion of whether the record supports the jury's award.

## DECREE

For the foregoing reasons, we find that the trial court did not err in its May 31, 2023 judgment in denying Ms. Leininger's Motion in Limine with regard to Dr. Greve. However, we further find that the trial court did err in its May 31, 2023 judgment in denying Ms. Leininger's Motion in Limine with regard to Dr. Bain and the collateral source rule. Having determined that the trial court erred in these respects, we vacate the trial court's June 1, 2023 judgment rendered in accordance with the jury verdict and remand this matter for a new trial consistent with this Opinion.

**VACATED AND REMANDED**